## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| THE GYMBOREE CORPORATION., *et al.*, [1] | ) | Case No. 17-32986 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF

Upon the motion, dated June 11, 2017 (the "DIP Motion") of The Gymboree Corporation (the "Company"), Gymboree Manufacturing, Inc., Gymboree Operations, Inc., Gymboree Retail Stores, Inc., Gym-Mark, Inc., S.C.C. Wholesale, Inc., and Gym-Card, LLC (collectively, the "Loan Parties") and Giraffe Intermediate B, Inc. (the "Holdings"), each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Final Order") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") *inter alia*:

(i)         authorizing the Debtors to obtain senior secured postpetition financing on a

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  The Gymboree Corporation (5258); Giraffe Intermediate B, Inc. (0659); Gym-Card, LLC (5720); Gym-Mark, Inc. (6459); Gymboree Manufacturing, Inc. (6464); Gymboree Retail Stores, Inc. (6461); Gymboree Operations, Inc. (6463); and S.C.C. Wholesale, Inc. (6588).  The location of the Debtors' service address is 71 Stevenson Street, Suite 2200, San Francisco, California 94105.

superpriority basis consisting of a senior secured superpriority credit facility in the aggregate

principal amount of up to $273,450,000 (the "DIP ABL Credit Facility"), which shall include (a)

an $88,000,000 sublimit for the issuance of letters of credit and (b) a $30,000,000 sublimit for

swingline loans, consisting of (x) $219,000,000 in revolving "tranche A" commitments (the

"DIP ABL Tranche A Commitments," and the loans extended thereunder, the "DIP ABL

Tranche A Loans"); (y) $6,000,000 in revolving FILO commitments (the "DIP ABL FILO

Commitments," and the loans extended thereunder, the "DIP ABL FILO Loans," and the DIP

ABL FILO Loans together with the DIP ABL Tranche A Loans, the "DIP Revolving Loans");

and (z) $48,450,000 in ABL term loan commitments (the "DIP ABL Term Loan Commitments,"

and the loans made thereunder, the "DIP ABL Term Loans," and the DIP ABL Term Loans and

the DIP Revolving Loans, together, the "DIP ABL Loans"), pursuant to the terms and conditions

of that certain *Senior Secured, Super-Priority Debtor-In-Possession Credit Agreement* (as the

same may be amended, restated, supplemented, waived or otherwise modified from time to time,

the "DIP ABL Agreement"), by and among the Company and the Loan Parties, as borrowers,

Holdings, as guarantor, Bank of America, N.A., as administrative agent and collateral agent (in

such capacities, the "DIP ABL Administrative Agent") and Pathlight Capital LLC, as ABL term

loan agent (in such capacity, the "DIP ABL Term Agent" and together with the DIP ABL

Administrative Agent, the "DIP ABL Agents") for and on behalf of themselves and the other

lenders party thereto (collectively, including the DIP ABL Agents, the "DIP ABL Lenders"),

substantially in the form of **Exhibit B**, attached to the DIP Motion;

(ii)     authorizing the Debtors to execute and deliver the DIP ABL Agreement and

any other agreements, instruments, pledge agreements, guarantees, control agreements  and other

Loan Documents (as defined in the DIP ABL Agreement) and documents related thereto

(including any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP ABL Agreement, the "DIP ABL Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Documents;

(iii)    granting to the DIP ABL Agents and the DIP ABL Lenders on account of the DIP ABL Credit Facility and all obligations owing thereunder and under, or secured by, the DIP ABL Documents (collectively, and including all "Obligations" as described in the DIP ABL Agreement, the "DIP ABL Obligations") allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (as defined herein);

(iv)    authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis in the aggregate principal amount of $105,000,000 (the "DIP Term Loan Facility," and all amounts extended under the DIP Term Loan Facility, the "DIP Term Loans," and the DIP Term Loan Facility together with the DIP ABL Credit Facility, the "DIP Facilities"), consisting of (a) a $35,000,000 new money multiple draw term loan facility ("New Money DIP Term Loans") and (b) $70,000,000 of term loans resulting from the "roll-up" of amounts outstanding under the Prepetition Term Loan Agreement (as defined herein), pursuant to the terms and conditions of that certain *Debtor-in-Possession Credit Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Term Loan Agreement," and together with the DIP ABL Agreement, the "DIP Agreements"), by and among the Company, as borrower, Holdings and the Loan Parties, as guarantors, and Credit Suisse AG, Cayman Islands Branch as administrative agent (the "DIP Term Loan Agent," and, together with the DIP ABL Agents, the "DIP Agents") for and on behalf of itself and the other

3

lenders party thereto (collectively, including the DIP Term Loan Agent, the "DIP Term Loan Lenders," and, together with the DIP ABL Lenders, the "DIP Lenders") substantially in the form of **Exhibit C**, attached to the DIP Motion;

(v)       authorizing the Debtors to execute and deliver the DIP Term Loan Agreement and any other agreements, instruments, pledge agreements, guarantees, control agreements, and other Loan Documents (as defined in the DIP Term Loan Agreement) and documents related thereto (as amended, restated, supplemented, wavied, and/or modified from time to time, collectively, with the DIP Term Loan Agreement, the "DIP Term Loan Documents," and together with the DIP ABL Documents, the "DIP Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP Term Loan Documents;

(vi)       granting to the DIP Term Loan Agent and the DIP Term Loan Lenders on account of the DIP Term Loan Facility and all obligations owing thereunder and under, or secured by, the DIP Term Loan Documents (collectively, and including all "Obligations" as described in the DIP Term Loan Agreement, the "DIP Term Loan Obligations," and together with the DIP ABL Obligations, the "DIP Obligations") allowed superpriority administrative claims in each of the Cases and any Successor Cases;

(vii)       granting to each of (a) the DIP ABL Administrative Agent, for the benefit of itself and the DIP ABL Lenders and the other Secured Parties (as defined in the DIP ABL Agreement) under the applicable DIP Documents and (b) the DIP Term Loan Agent, for the benefit of itself and the DIP Term Loan Lenders and the other Secured Parties (as defined in the DIP Term Loan Agreement) under the applicable DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code

("Cash Collateral"), which liens shall be subject to the priorities set forth herein;

(viii)      authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agents' attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(ix)      authorizing the Debtors to use the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition ABL Parties under the Prepetition ABL Documents and the Prepetition Term Loan Parties under the Prepetition Term Loan Documents (each as defined herein), and providing adequate protection to the Prepetition ABL Parties and Prepetition Term Loan Parties for any diminution in value resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, the priming of their respective interests in the Prepetition Collateral (including by the Carve Out) ("Diminution in Value") of their respective interests in the Prepetition Collateral, including the Cash Collateral; and

(x)      vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of David Kurtz in Support of the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (ii) Authorizing*

the Debtors to Use Cash Collateral, (iii) Granting Liens and Providing Superpriority

Administrative Expense Status, (iv) Granting Adequate Protection to the Prepetition Lenders, (v)

Modifying the Automatic Stay, (vi) Scheduling a Final Hearing, and (vii) Granting Related

Relief, the Declaration of James A. Mesterharm, Chief Restructuring Officer of the Gymboree

Corporation, in Support of the Debtors' Emergency Motion for Entry of Interim and Final

Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (ii) Authorizing the

Debtors to Use Cash Collateral, (iii) Granting Liens and Providing Superpriority Administrative

Expense Status, (iv) Granting Adequate Protection to the Prepetition Lenders, (v) Modifying the

Automatic Stay, (vi) Scheduling a Final Hearing, and (vii) Granting Related Relief, and the

Declaration of James A. Mesterharm, Chief Restructuring Officer of The Gymboree

Corporation, in Support of Chapter 11 Petitions and First Day Motions, the DIP Documents,

and the evidence submitted and argument made at the interim hearing held on June 12, 2017 (the

"Interim Hearing") and the final hearing held on July 11, 2017 (the "Final Hearing"); and the

Court having entered the Interim Order (I) Authorizing the Debtors to Obtain Postpetition

Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and

Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to

the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and

(VII) Granting Related Relief on June 12, 2017 [Docket No. 86] (the "Interim Order"); and

notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002,

4001(b), (c) and (d), and all applicable local rules of the United States Bankruptcy Court for the

Eastern District of Virginia (the "Local Rules"); and the Final Hearing having been held and

concluded; and all objections, if any, to the final relief requested in the DIP Motion having been

withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief

requested in the DIP Motion on a final basis is necessary to avoid immediate and irreparable

harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best

interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued

operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and

it appearing that the Debtors' entry into the DIP Agreements is a sound and prudent exercise of

the Debtors' business judgment; and after due deliberation and consideration, and good and

sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM AND FINAL
HEARINGS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND
CONCLUSIONS OF LAW:**[2]

    A.    **Petition Date**.  On June 11, 2017 (the "Petition Date"), each of the

Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the

United States Bankruptcy Court for the Eastern District of Virginia (the "Court").

    B.    **Debtors in Possession**.  The Debtors have continued in the management

and operation of their businesses and properties as debtors in possession pursuant to sections

1107 and 1108 of the Bankruptcy Code.

    C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the

DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and

1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.  **Committee Formation**.  On June 22, 2017, the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

E.  **Notice**.  Proper, timely, adequate, and sufficient notice of the DIP Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

F.  **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 43 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xi) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)  *Prepetition ABL Facility*.  Pursuant to that certain Credit Agreement dated as of March 30, 2012 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with the Loan Documents (as defined in the Prepetition ABL Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition ABL Documents"), among (a) the borrowers party thereto (the "Prepetition ABL Borrowers"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors"), (c) Bank of America, N.A., as administrative agent and collateral agent (in such capacities, the "Prepetition ABL Administrative Agent"), (d) Pathlight Capital LLC, as ABL term loan agent (in such capacity,

the "Prepetition ABL Term Agent" and together with the Prepetition ABL Administrative Agent,

the "Prepetition ABL Agents"), and (e) the lenders party thereto (including the Prepetition ABL

Agents, the "Prepetition ABL Lenders," and collectively with the Prepetition ABL Agents, the

"Prepetition ABL Parties"), the Prepetition ABL Lenders provided revolving credit, term loans

and other financial accommodations to, and issued letters of credit for the account of, the

Prepetition ABL Borrowers pursuant to the Prepetition ABL Documents (the "Prepetition ABL

Facility").  The Prepetition ABL Agreement is subject to that certain Waiver to Amended and

Restated Credit Agreement dated as of May 22, 2017.

(ii)    *Prepetition ABL Obligations*.   The Prepetition ABL Facility

provided the Prepetition ABL Borrowers with, among other things, (a) up to $225,000,000

aggregate principal amount of Revolving Credit Loans (as defined in the Prepetition ABL

Agreement), and (b) $50,000,000 in ABL Term Loans (as defined in the Prepetition ABL

Agreement).  As of the Petition Date, the aggregate principal amount outstanding under the

Prepetition ABL Facility was not less than $177,868,169.67 (collectively, together with accrued

and unpaid interest, outstanding letters of credit and bankers' acceptances, any reimbursement

obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any

fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees,

appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury,

cash management, bank product and derivative obligations, indemnification obligations,

guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether

or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of

any of the Prepetition ABL Borrowers' or the Prepetition ABL Guarantors' obligations pursuant

to, or secured by, the Prepetition ABL Documents, including all "Obligations" as defined in the

Prepetition ABL Agreement, and all interest, fees, prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations"), including $75,848,342 in outstanding principal of Tranche A Loans (as defined in the Prepetition ABL Agreement), $5,151,658 in outstanding principal of FILO Loans (as defined in the Prepetition ABL Agreement), and $47,500,000 in outstanding principal of ABL Term Loans.

(iii)      *Prepetition ABL Liens and Prepetition ABL Priority Collateral.* As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors granted to the Prepetition ABL Administrative Agent, for the benefit of itself and the Prepetition ABL Lenders, a security interest in and continuing lien on (the "Prepetition ABL Liens") substantially all of their assets and property (with certain exceptions set out in the Prepetition ABL Documents) including (a) a first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in that certain Intercreditor Agreement referred to below) (which, for the avoidance of doubt, includes Cash Collateral *other than* (x) Term Loan Priority Accounts (as defined in the Intercreditor Agreement), (y) Cash Collateral (in the case of each of (x) and (y), that is proceeds of Term Priority Collateral (as defined in the Intercreditor Agreement)), and (z) the DIP Term Funding Account (as defined herein)) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), and (b) a second priority security interest in and continuing lien on the Term Priority Collateral and proceeds, products, and rents of any of the foregoing (collectively, the "Prepetition Term Priority Collateral," and together with the Prepetition ABL Priority Collateral, the "Prepetition Collateral"), subject only to the

liens of the Prepetition Term Loan Agent on the Prepetition Term Priority Collateral and Prepetition ABL Permitted Prior Liens (as defined herein).

(iv)     *Prepetition Term Loan Facility*.   Pursuant to that certain Credit Agreement dated as of February 11, 2011 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Agreement," and collectively with the Loan Documents (as defined in the Prepetition Term Loan Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Documents," and together with the Prepetition ABL Documents, the "Prepetition Documents"), among (a) the Company (the "Prepetition Term Loan Borrower" and together with the Prepetition ABL Borrowers, the "Prepetition Borrowers"), (b) Credit Suisse AG, Cayman Islands Branch, as administrative agent and collateral agent (in such capacities, the "Prepetition Term Loan Agent," and together with the Prepetition ABL Agents, the "Prepetition Agents"), (c) the guarantors thereunder (the "Prepetition Term Loan Guarantors" and, together with the Prepetition ABL Guarantors, the "Prepetition Guarantors"), and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively with the Prepetition Term Loan Agent, the "Prepetition Term Loan Parties," and together with the Prepetition ABL Parties, the "Prepetition Secured Parties"), the Prepetition Term Loan Lenders provided term loans to the Prepetition Term Loan Borrower (the "Prepetition Term Loan Facility," and together with the Prepetition ABL Facility, the "Prepetition Secured Facilities").

(v)     *Prepetition Term Loan Obligations*.   The Prepetition Term Loan Facility provided the Prepetition Term Loan Borrower with term loans in the aggregate principal amount of $820,000,000.   As of the Petition Date, the aggregate principal amount outstanding

under the Prepetition Term Loan Facility was $768,750,000 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Term Loan Borrower's and the Prepetition Term Loan Guarantors' obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Agreement, and all interest, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "Prepetition Term Loan Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

(vi)    *Prepetition Term Loan Liens and Prepetition Term Priority Collateral.*  As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition Date, the Prepetition Term Loan Borrower and the Prepetition Term Loan Guarantors granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, a security interest in and continuing lien on (the "Prepetition Term Loan Liens," and together with the Prepetition ABL Liens, the "Prepetition Liens") substantially all of their assets and property (with certain exceptions set out in the Prepetition Term Loan Documents), including (a) a first priority security interest in and continuing lien on the Prepetition Term Priority Collateral, and (b) a second priority security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the liens of the Prepetition ABL Administrative Agent on the Prepetition ABL Priority Collateral and Prepetition Term Loan Permitted Prior Liens (as defined herein).

(vii)   *Priority of Prepetition Liens; Intercreditor Agreement.*   The Prepetition ABL Administrative Agent and the Prepetition Term Loan Agent entered into that certain Intercreditor Agreement dated as of November 23, 2010 (as supplemented and modified by that certain Acknowledgment and Agreement dated as of June 15, 2017, and as may be further amended, restated, supplemented, or otherwise modified in accordance with its terms, the "Intercreditor Agreement") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors and other obligors.  Each of the Prepetition Borrowers and Prepetition Guarantors under the Prepetition Documents acknowledged and agreed to the Intercreditor Agreement.

(viii)   *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*  The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition Term Loan Liens on the Prepetition Term Priority Collateral, and (2) certain liens otherwise permitted by the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "Prepetition ABL Permitted Prior Liens"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL

13

Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(ix)    *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.*  The Debtors further acknowledge and agree that, as of the Petition Date, (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral, and (2) certain liens otherwise permitted by the Prepetition Term Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the

"Prepetition Term Loan Permitted Prior Liens" and, together with the Prepetition ABL Permitted

Prior Liens, the "Permitted Prior Liens");[3] (c) the Prepetition Term Loan Obligations constitute

legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance

with the terms of the applicable Prepetition Term Loan Documents; (d) no offsets, recoupments,

challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the

Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the

Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or

defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination

(equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e)

the Debtors and their estates have no claims, objections, challenges, causes of action, and/or

choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or

applicable state law equivalents or actions for recovery or disgorgement, against any of the

Prepetition Term Loan Parties, or any of their respective affiliates, agents, attorneys, advisors,

professionals, officers, directors, and employees arising out of, based upon or related to the

Prepetition Term Loan Facility; (f) the Debtors have waived, discharged, and released any right

to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors'

obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition

Term Loan Obligations; and (g) the Prepetition Term Loan Obligations constitute allowed,

secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(x)      *Release*.  The Debtors hereby stipulate and agree that they forever

and irrevocably release, discharge and acquit the DIP Agents, the Prepetition Secured Parties, all

---

[3]  For the avoidance of doubt, as used in this Final Order, no reference to the Prepetition ABL Permitted
Prior Liens, the Prepetition Term Loan Permitted Prior Liens, or the Permitted Prior Liens shall refer to
or include the Prepetition ABL Liens or the Prepetition Term Loan Liens.

former and current DIP Lenders, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever relating to, as applicable, the DIP Facilities, the DIP Documents, the Prepetition Secured Facilities, the Prepetition Documents and/or the transactions contemplated hereunder or thereunder arising before entry of this Final Order, including (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Agents, the Prepetition Secured Parties, the DIP Agents and the DIP Lenders. The Debtors further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors may now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to this Court entering this Final Order.

(xi)     *Default by the Debtors.*   The Debtors acknowledge and stipulate that they have been and are in default of their obligations under the Prepetition Documents and that, as a result of the Cases, an Event of Default has occurred under the Prepetition Documents. As of the Petition Date, therefore, interest was accruing on the Prepetition Secured Obligations at the default rate.

G.     **Permitted Prior Liens**.  Nothing herein shall constitute a finding or ruling

by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected,

or non-avoidable.   Moreover, nothing shall prejudice the rights of any party-in-interest,

including, but not limited to the Debtors, the DIP ABL Administrative Agent, the DIP Term

Loan Agent, the Prepetition Secured Parties, or the Committee, to challenge the validity, priority,

enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien

and/or security interests.   The right of a seller of goods to reclaim such goods under section

546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the

Prepetition Liens and DIP Liens.

        H.     **Cash Collateral**.  All of the Debtors' cash, including any cash in deposit

accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured

Parties.

        I.     **Intercreditor Agreement**.   Pursuant to section 510 of the Bankruptcy

Code, the Intercreditor Agreement and any other applicable intercreditor or subordination

provisions contained in any of the Prepetition Documents (i) shall remain in full force and effect,

(ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured

Parties (including the relative priorities, rights and remedies of such parties with respect to the

replacement liens and administrative expense claims and superpriority administrative expense

claims granted, or amounts payable, by the Debtors under this Final Order or otherwise and the

modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or

modified by the terms of this Final Order or the DIP Documents, unless expressly set forth

herein or therein.  The DIP ABL Credit Facility is deemed a "refinancing" of the Prepetition

ABL Facility as such term is used in the Intercreditor Agreement, and the conversion of the

Prepetition ABL Obligations into DIP ABL Obligations pursuant to the Interim Order did not

constitute a "Discharge of ABL Obligations" (as defined in the Intercreditor Agreement).  The DIP Term Loan Facility is deemed a "refinancing" in part of the Prepetition Term Loan Facility as such term is used in the Intercreditor Agreement, and the conversion of $70,000,000 of the Prepetition Term Loan Obligations pursuant to the Interim Order did not constitute a "Discharge of Term Obligations" (as defined in the Intercreditor Agreement).  The Prepetition ABL Administrative Agent, the Prepetition Term Loan Agent, the DIP ABL Administrative Agent, and the DIP Term Loan Agent are also party to that certain Acknowledgment and Agreement dated as of June 15, 2017, which is acknowledged and agreed to by the Debtors.

J.      **Findings Regarding Postpetition Financing**

(i)      *Request for Postpetition Financing*.  The Debtors seek authority on a final basis to continue (a) borrowing under the DIP Facilities on the terms described herein and in the DIP Documents, and (b) using Cash Collateral on the terms described herein to administer their Cases and fund their operations.

(ii)      *Priming of the Prepetition Liens*.  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facilities, as authorized by the Interim Order and this Final Order, and as further described below, will enable the Debtors to continue borrowing under the DIP Facilities and to continue operating their businesses to the benefit of their estates and creditors. The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in the Interim Order and this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii)      *Need for Postpetition Financing and Use of Cash Collateral.*

Since the Petition Date, the Debtors have had a need to use Cash Collateral and to continue obtaining credit pursuant to the DIP Facilities in order to, among other things, enable the orderly continuation of their operations and to administer and preserve the value of their estates.  The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facilities and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facilities and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms*.  Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facilities.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis on better terms is not otherwise available without granting the DIP ABL Administrative Agent and the DIP Term Loan Agent, for the benefit of themselves and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities

set forth in paragraph 6 of the Interim Order and paragraph 6 hereof; (2) superpriority claims and

liens; and (3) the other protections set forth in the Interim Order and this Final Order.

(v)     *Use of proceeds of the DIP Facilities*.  As a condition to entry into

the DIP Agreements, the extension of credit under the DIP Facilities and the authorization to use

Cash Collateral, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties required,

and continue to require, and the Debtors have agreed, that proceeds of the DIP Facilities shall be

used, in each case in a manner consistent with the terms and conditions of the Interim Order, this

Final Order and the DIP Documents and in accordance with the budget (as the same may be

modified from time to time consistent with the terms of the DIP Documents and subject to such

variances as permitted in the DIP Agreements, and as set forth in paragraph 21 hereof, the

"Budget"),[4] solely for: (a) working capital and letters of credit; (b) other general corporate

purposes of the Debtors; (c) permitted payment of costs of administration of the Cases; (d)

payment of such other prepetition obligations as permitted under the DIP Documents and as

consented to by the DIP Agents, each in its sole discretion, and as approved by the Court; (e)

payment of interest, fees, expenses and other amounts (including legal and other professionals'

fees and expenses of the DIP Agents) owed under the DIP Documents; (f) payment of certain

adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraphs 16-17

of the Interim Order and paragraphs 16-17 hereof; (g) the conversion of the Prepetition ABL

Obligations into DIP ABL Obligations, subject to the rights preserved in paragraph 43 of this

Final Order; (h) payment of obligations arising from or related to the Carve Out, and making

disbursements therefrom, including by funding the Carve Out Reserves; and (i) such other uses

set forth in the Budget.

---

[4]     A copy of the initial Budget is attached hereto as **Schedule 1**.

(vi)  *Application of Proceeds of Collateral.*  As a condition to entry into the DIP Agreements, the extension of credit under the DIP Facilities and authorization to use Cash Collateral, the Debtors, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with the Interim Order and this Final Order.

(vii)  *Roll-up Loans.*  Immediately upon entry of the Interim Order, without any further action by the Debtors or any other party, (x) all of the Prepetition ABL Obligations were converted into DIP ABL Obligations (the "DIP ABL Roll-Up Loans") and (y) $70,000,000 of Prepetition Term Loan Obligations were converted into DIP Term Loan Obligations (the "DIP Term Roll-Up Loans" and, together with the DIP ABL Roll-Up Loans, the "DIP Roll-Up Loans").  The conversion (or "roll-up") was authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition ABL Lenders and certain Prepetition Term Loan Lenders to fund amounts under the respective DIP Facilities and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  Notwithstanding any other provision of the Interim Order, this Final Order, the DIP Agreements or the Intercreditor Agreement, all rights of the Prepetition Secured Parties shall be fully preserved.  The Prepetition Secured Parties would not have otherwise consented to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agents and the DIP Lenders would not be willing to continue providing the respective DIP Facilities or continue extending credit to the Debtors thereunder without the inclusion of the DIP Roll-Up Loans in the DIP Obligations.  Moreover, the conversion and "roll-up" of all outstanding Prepetition ABL Obligations into DIP ABL Obligations created availability under the DIP ABL

Credit Facility and resulted in interest savings to the Debtors and their estates and the conversion and "roll-up" of $70,000,000 of Prepetition Term Loan Obligations into DIP Term Roll-Up Loans enabled the Debtors to obtain urgently needed financing that will allow them to fund a reorganization process and emerge from these Cases as a going concern.  Because the DIP Roll-Up Loans remain subject to the reservation of rights in paragraph 43 below, they did not prejudice the right of any party in interest.

(viii)  *DIP Election Procedures.*   The procedures (the "DIP Election Procedures") governing the Prepetition Term Loan Lenders' participation in the DIP Term Loan Facility that are described in the DIP Motion were fair and reasonable.  All Prepetition Term Loan Lenders were provided, via the Prepetition Term Loan Lender data site maintained by the Term Loan Agent, extensive financial information, along with the DIP Term Loan Agreement and the DIP Election Procedures.  Each Prepetition Term Loan Lender (other than the holder of the 2017 Incremental Term Loan (as defined in the Prepetition Term Loan Credit Agreement) that elected to participate in providing the DIP Term Loans (each, an "Electing DIP Term Lender") was given an opportunity to participate in an amount equal to such Electing DIP Term Lender's pro rata share (determined on the basis of the principal amount of Prepetition Term Loans held by such Lender as compared to the principal amount of Prepetition Term Loans held by all Prepetition Term Loan Lenders (in each case, excluding the 2017 Incremental Term Loans) by executing an Election Joinder attached to the DIP Term Loan Agreement as Exhibit J (an "Election Joinder") and executing a joinder to the Restructuring Support Agreement no later than 5:00 p.m. eastern standard time on June 26, 2017 (the "Election Deadline") and (i) each such Electing DIP Term Lender became a DIP Term Loan Lender on the day after the Election Deadline and (ii) the commitments (prior to any reduction, the "Initial DIP Commitments") of

22

each of the DIP Term Loan Lenders prior to the Election Date (the "Initial DIP Term Loan Lenders") were reduced proportionally on such date.

K.      **Adequate Protection**.   The Prepetition ABL Administrative Agent, for the benefit of itself and the Prepetition ABL Parties, and the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, are each entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral.   Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection: (i) the Prepetition ABL Parties have received and will continue to receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 14 of the Interim Order and paragraphs 12 and 14 herein, and (b) current payment of interest, reasonable and documented fees and out-of-pocket expenses (including legal and other professionals' fees and expenses of the Prepetition ABL Agents whether arising before or after the Petition Date), as more fully set forth in paragraph 16 of the Interim Order and paragraph 16 herein; and (ii) the Prepetition Term Loan Parties have received and will continue to receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 14 of the Interim Order and paragraphs 12 and 14 herein, and (b) current payment of expenses (including legal and other professionals' reasonable and documented fees and out-of-pocket expenses of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders whether arising before or after the Petition Date), as more fully set forth in paragraph 17 of the Interim Order and paragraph 17 herein.

L.      **Sections 506(c) and 552(b).**   In light of: (i) the DIP ABL Administrative Agent's, the DIP Term Loan Agent's and the DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out; (ii) the Prepetition ABL Administrative

Agent's and the Prepetition ABL Lenders' agreement that their liens shall be subject to the Carve Out and subordinate to the DIP ABL Liens and, in the case of the Prepetition Term Priority Collateral, subordinate to the DIP Term Loan Liens and the Prepetition Term Loan Adequate Protection Liens (in addition to the Prepetition Term Loan Liens); (iii) the Prepetition Term Loan Parties' agreement that their liens shall be subject to the Carve Out and subordinate to the DIP Term Loan Liens and, in the case of the Prepetition ABL Priority Collateral, subordinate to the DIP ABL Liens and the Prepetition ABL Adequate Protection Liens (in addition to the Prepetition ABL Liens); and (iv) the payment of expenses as set forth in the Budget, including certain critical trade claims in accordance with and subject to the terms and conditions of this Final Order and the DIP Documents, (a) the Prepetition ABL Administrative Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) the DIP ABL Administrative Agent, the DIP Term Loan Agent, the DIP Lenders, the Prepetition ABL Administrative Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Agent, and the Prepetition Term Loan Lenders are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

M.     **Good Faith of the DIP Agents and DIP Lenders**.

(i)     *Willingness to Provide Financing*.   The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the DIP Facilities and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facilities are essential to the Debtors' estates, that the DIP Agents and the DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents

in good faith, and that the DIP Agents' and the DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facilities and the DIP Documents, and the fees paid and to be paid thereunder and hereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The terms and conditions of the DIP Facilities and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties, with the assistance and counsel of their respective advisors.  Use of Cash Collateral and credit to be extended under the DIP Facilities shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

N.    **Final Hearing**.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 50 largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition ABL Administrative Agent; (iv) counsel to the Prepetition ABL Term Agent; (v) counsel to the Prepetition Term Loan Agent; (vi) counsel to the Deutsche Bank Trust Company Americas, as trustee (in such capacity, the "Indenture Trustee") under that certain Indenture dated as of November 23, 2010 (as amended, restated,

supplemented, or otherwise modified from time to time); and (vii) all other parties entitled to notice under the Local Rules.  In addition, counsel for the Committee received notice of the Final Hearing and has had sufficient opportunity to review the DIP Motion, the Interim Order and this Final Order.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    <u>Final Financing Approved</u>.    The DIP Motion is granted, the Final Financing (as defined herein) is authorized and approved, and the use of Cash Collateral is authorized, in each case on a final basis and subject to the terms and conditions set forth in the DIP Documents and this Final Order.  All objections to the DIP Motion and this Final Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

**<u>DIP Facilities Authorization</u>**

2.    <u>Authorization of the DIP Facilities</u>.    The DIP Facilities are hereby approved on a final basis.    The Debtors are expressly and immediately authorized and empowered on a final basis to continue borrowing under the DIP Facilities, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, this Final Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facilities and the creation and perfection of the DIP Liens (as defined herein) described

in and provided for by the Interim Order, this Final Order and the DIP Documents, including

each of Holdings and the Loan Parties providing its joint and several guarantee of all of the DIP

Obligations.  The Debtors are hereby authorized and directed on a final basis to pay, in

accordance with the Interim Order and this Final Order, the principal, interest, fees, payments,

expenses, and other amounts described in the DIP Documents as such amounts become earned,

due and payable and without need to obtain further Court approval, including closing fees, letter

of credit fees (including issuance, fronting, and other related charges), unused facility fees,

prepayment premiums, continuing commitment fees, backstop fees, servicing fees, audit fees,

appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees

and disbursements of the DIP Agents' attorneys, advisors, accountants, and other consultants,

whether or not such fees arose before or after the Petition Date, and whether or not the

transactions contemplated hereby are consummated, to implement all applicable reserves and to

take any other actions that may be necessary or appropriate, all to the extent provided in the

Interim Order, this Final Order or the DIP Documents.  All collections and proceeds, whether

from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries,

condemnations, or otherwise, will be deposited and applied as required by this Final Order and

the DIP Documents.  The DIP Documents represent valid and binding obligations of the Debtors,

enforceable against each of the Debtors and their estates in accordance with their terms.  Upon

the Closing Date, the DIP Term Loan backstop premium, equal to 3.5% of the New Money DIP

Term Loans was fully earned, non-refundable, and payable ratably to the Initial DIP Term Loan

Lenders based on their Initial Commitments (prior to giving effect to the DIP Election

Procedures) in accordance with the provisions of the DIP Term Loan Documents.

       3.    <u>Authorization to Borrow</u>.  To prevent immediate and irreparable harm to

the Debtors' estates, from the entry of this Final Order through and including the Termination

Declaration (as defined below), and subject to the terms, conditions and limitations set forth in

the DIP Documents, including on availability and reserves (as applicable), and this Final Order,

the Debtors are hereby authorized on a final basis to continue requesting extensions of credit (in

the form of loans and letters of credit) up to an aggregate outstanding principal amount of not

greater than $273,450,000 at any one time outstanding under the DIP ABL Credit Facility, and

$20,000,000 in two separate draws under the DIP Term Loan Credit Facility, in each case subject

to the terms and conditions of the applicable DIP Documents (together, the "Final Financing").

       4.     DIP Obligations.   The DIP Documents and this Final Order shall

constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which

shall be enforceable against the Debtors, their estates and any successors thereto, including any

trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the

conversion of any of the Cases, or in any other proceedings superseding or related to any of the

foregoing (collectively, the "Successor Cases").  The DIP Obligations include all loans, letter of

credit reimbursement obligations, and any other indebtedness or obligations, contingent or

absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agents

or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents, the Interim

Order or this Final Order, including all principal, accrued interest, costs, fees, expenses and other

amounts under the DIP Documents.  Without limiting the foregoing, the DIP ABL Obligations

also include cash management and bank product exposure and derivative and swap exposure and

obligations to the extent described in, or secured by, the Prepetition ABL Documents and DIP

ABL Documents, including all Other Liabilities (as defined in the DIP ABL Agreement).  All

letters of credit issued for the account of the Debtors under the Prepetition ABL Agreement have

continued in place and all obligations under or in connection with such letters of credit are

subject to the DIP ABL Agreement and constitute DIP ABL Obligations.  The Debtors shall be

jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and

payable, without notice or demand, and the use of Cash Collateral shall automatically cease on

the DIP Termination Date (as defined herein), except as provided in paragraph 31 herein.  No

obligation, payment, transfer, or grant of collateral security hereunder or under the DIP

Documents (including any DIP Obligation or DIP Liens (as defined below), and including in

connection with any adequate protection provided to the Prepetition Secured Parties hereunder)

shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or

under any applicable law (including under sections 502(d), 544, and 547 to 550 of the

Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common

law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization,

subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense,

or any other challenge under the Bankruptcy Code or any applicable law or regulation by any

person or entity.

     5.    _DIP Liens_.  Subject and subordinate to the Carve Out as set forth in this

Final Order, in order to secure the DIP Obligations, pursuant to sections 361, 362, 364(c)(2),

364(c)(3), and 364(d) of the Bankruptcy Code, the DIP ABL Administrative Agent, for the

benefit of itself and the DIP ABL Lenders, and the DIP Term Loan Agent, for the benefit of

itself and the DIP Term Loan Lenders, were granted upon entry of the Interim Order and are

hereby granted on a final basis, continuing, valid, binding, enforceable, non-avoidable, and

automatically and properly perfected postpetition security interests in and liens on (collectively,

the "DIP Liens") all real and personal property, whether now existing or hereafter arising and

wherever located, tangible and intangible, of each of the Debtors (the "DIP Collateral"),

including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other

receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever

located), instruments, documents, securities (whether or not marketable) and investment property

(including all of the issued and outstanding capital stock of each of its subsidiaries), hedge

agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights,

trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property,

general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the

payment of money (including tax refunds and any other extraordinary payments), supporting

obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all

substitutions, indemnification rights, all present and future intercompany debt, fee interests in

real property owned by the Debtors, books and records related to the foregoing, accessions and

proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all

owned real property interests and all proceeds of leased real property; (c) actions brought under

section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d)

the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or

applicable state law equivalents (other than actions brought pursuant to section 549 of the

Bankruptcy Code); (e) the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code

and the proceeds thereof; and (f) all DIP Collateral that was not otherwise subject to valid,

perfected, enforceable, and unavoidable liens on the Petition Date.   Notwithstanding the

foregoing, DIP Collateral shall not include (i) the Debtors' real property leases (but shall include

all proceeds of such leases), and (ii) Excluded Property or Excluded Subsidiaries (as defined in

the applicable DIP Agreement or other DIP Documents).  DIP Collateral that is (i) of a type that

would be ABL Priority Collateral; (ii) of a type that would be ABL Priority Collateral, but that

was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition

Date; (iii) the proceeds of the Debtors' real property leases; and (iv) the proceeds of avoidance

actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law

equivalents, shall, in each case, constitute "DIP ABL Priority Collateral"; *provided, however*,

that the DIP ABL Agent and DIP ABL Lenders shall first seek recourse against the DIP ABL

Priority Collateral comprising the Debtors' Inventory and Accounts (each as defined in the

Prepetition ABL Agreement) prior to exercising any remedies against lease proceeds or proceeds

of avoidance actions.  DIP Collateral that is (i) of a type that would be Term Priority Collateral

(including the Segregated Operating Account (as such term is defined in the DIP Term Loan

Agreement)) and (ii) of a type that would be Term Priority Collateral but that was not otherwise

subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date, shall, in each

case, constitute "DIP Term Loan Priority Collateral."  The DIP Term Funding Account (which is

an account of the DIP Term Loan Agent) shall not be subject to any lien in favor of the

Prepetition ABL Parties or the DIP ABL Lenders.  For the avoidance of doubt, the DIP Liens

securing DIP Term Roll-Up Loans shall be released on the later of (i) the effective date and (ii)

the satisfaction of any claim derived from or based upon the DIP Term Roll-Up Loans, in

accordance with the terms of the *Joint Chapter 11 Plan of Reorganization of the Gymboree*

*Corporation and its Debtor Affiliates* [Docket No. 140] (as may be modified, amended, or

supplemented, the "Plan").

      6.    DIP Lien Priority.  The DIP Liens securing the DIP ABL Obligations (the

"DIP ABL Liens") are valid, automatically perfected, non-avoidable, senior in priority, and

superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral,

except that the DIP ABL Liens shall be subject to the Carve Out as set forth in this Final Order

and shall otherwise be junior only to: (i) as to the DIP ABL Priority Collateral, Permitted Prior

Liens; and (ii) as to the DIP Term Priority Collateral, (A) Permitted Prior Liens; (B) the DIP

Term Loan Liens (as defined herein); (C) the Prepetition Term Loan Liens; and (D) the

Prepetition Term Loan Adequate Protection Liens (as defined herein).  The DIP Liens securing

the DIP Term Loan Obligations (the "DIP Term Loan Liens") are valid, automatically perfected,

non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien,

or claim to any of the DIP Collateral, except that the DIP Term Loan Liens shall be subject to the

Carve Out as set forth in this Final Order and shall otherwise be junior only to: (i) as to the DIP

Term Priority Collateral, Permitted Prior Liens; and (ii) as to the DIP ABL Priority Collateral,

(A) Permitted Prior Liens; (B) the DIP ABL Liens; (C) the Prepetition ABL Liens; and (D) the

Prepetition ABL Adequate Protection Liens (as defined herein).  Other than as set forth herein

(including the Carve Out) or in the DIP Documents, the DIP Liens shall not be made subject to

or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or

any Successor Cases, and shall be valid and enforceable against any trustee appointed in the

Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7

of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the

Cases or Successor Cases.  The DIP Liens shall not be subject to section 510, 549 or 550 of the

Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant

to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

      7.    Superpriority Claims. Subject and subordinate to the Carve Out as set

forth in this Final Order, (i) the DIP ABL Administrative Agent, on behalf of itself and the DIP

ABL Lenders and (ii) the DIP Term Loan Agent, on behalf of itself and the DIP Term Loan
Lenders, were granted upon entry of the Interim Order, and are each hereby granted on a final
basis, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative
expense claims in each of the Cases and any Successor Cases (collectively, the "DIP
Superpriority Claims") for all DIP Obligations: (a) except as set forth herein, with priority over
any and all administrative expense claims and unsecured claims against the Debtors or their
estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind
or nature whatsoever, including administrative expenses of the kinds specified in or ordered
pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a),
507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as
provided under section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be
senior to the rights of the Debtors and their estates, and any successor trustee or other estate
representative to the extent permitted by law; *provided, however*, that the DIP Superpriority
Claims shall be *pari passu* with each other, without otherwise impairing the lien priorities as set
forth herein, and shall be subject to the Carve Out and senior to the Adequate Protection
Superpriority Claims (as defined herein).  For the avoidance of doubt, the DIP Superpriority
Claims arising from the DIP Term Roll-Up Loans shall be released on the later of (i) the
effective date and (ii) the satisfaction of any claim derived from or based upon the DIP Term
Roll-Up Loans, in accordance with the terms of the Plan.

        8.    <u>No Obligation to Extend Credit</u>.  Except as required to fund the Carve Out
as set forth in paragraph 40 of this Final Order, the DIP Agents and DIP Lenders shall have no
obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit
or bankers' acceptance under the DIP Documents, unless all of the conditions precedent to the

making of such extension of credit or the issuance, amendment, renewal, or extension of such

letter of credit or bankers' acceptance under the DIP Documents and this Final Order have been

satisfied in full or waived by the DIP ABL Administrative Agent or the DIP Term Loan Agent,

as applicable, and in accordance with the terms of the DIP ABL Agreement and the DIP Term

Loan Agreement, as applicable.

9.    <u>Use of Proceeds of DIP Facilities</u>.  From and after the Petition Date, the

Debtors shall use advances of credit under the DIP Facilities, in accordance with the Budget

(subject to such variances as permitted in the DIP Agreements), only for the purposes

specifically set forth in this Final Order and the DIP Documents, and in compliance with the

terms and conditions in this Final Order and the DIP Documents.

10.    <u>Roll-Up of Loans</u>.  Immediately upon entry of the Interim Order, without

any further action by the Debtors or any other party, and as a condition to the provision of

liquidity under each of the respective DIP Facilities, the DIP Roll-Up Loans were included in the

DIP Obligations, and (i) $70,000,000 of Prepetition Term Loan Obligations was converted and

"rolled-up" into DIP Term Roll-Up Loans and such Prepetition Term Loan Obligations were

reduced on a dollar-for-dollar basis and (ii) all Prepetition ABL Obligations were converted and

"rolled-up" into DIP ABL Roll-Up Loans, and such Prepetition ABL Obligations now constitute

DIP ABL Obligations.  The authorization of the DIP Roll-Up Loans remains subject to the

reservation of rights set forth in paragraph 43 of this Final Order.

**Authorization to Use Cash Collateral**

11.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions

of this Final Order, the DIP Facilities, and the DIP Documents and in accordance with the

Budget (subject to such variances as permitted in the DIP Agreements), the Debtors are

authorized to continue using Cash Collateral until the DIP Termination Date (as defined herein);

*provided, however*, that during the Remedies Notice Period (as defined herein) the Debtors may

use Cash Collateral solely to meet payroll obligations and pay expenses necessary to avoid

immediate and irreparable harm to the Debtors' estates in accordance with the Budget (subject to

such variances as permitted in the DIP Agreements), and as otherwise agreed by the DIP ABL

Administrative Agent and the DIP Term Loan Agent, each in their sole discretion.  Nothing in

this Final Order shall authorize the disposition of any assets of the Debtors or their estates

outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other

proceeds resulting therefrom, except as permitted in this Final Order (including the Carve Out),

the DIP Facilities, the DIP Documents, and in accordance with the Budget (subject to such

variances as permitted in the DIP Agreements).

        12.    <u>Adequate Protection Liens</u>.

        (a)    *Prepetition ABL Adequate Protection Liens*.  Subject and

subordinate to the Carve Out as set forth in this Final Order, pursuant to sections 361, 363(e),

and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition

ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the

Prepetition Collateral, the Debtors hereby grant on a final basis to the Prepetition ABL

Administrative Agent, for the benefit of itself and the Prepetition ABL Parties, continuing, valid,

binding, enforceable, and perfected postpetition security interests in and liens on the DIP

Collateral (the "<u>Prepetition ABL Adequate Protection Liens</u>").

        (b)    *Prepetition Term Loan Adequate Protection Liens*.  Subject and

subordinate to the Carve Out as set forth in this Final Order, pursuant to sections 361, 363(e),

and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition

Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant on a final basis to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "Prepetition Term Loan Adequate Protection Liens," and together with the Prepetition ABL Adequate Protection Liens, the "Adequate Protection Liens"); *provided* that the Prepetition Term Loan Parties shall not be entitled to any Prepetition Term Loan Adequate Protection Liens on account of any Diminution in Value arising from the DIP Term Roll-Up Loans.

13.     Priority of Adequate Protection Liens.

(a)     The Prepetition ABL Adequate Protection Liens shall be subject to the Carve Out as set forth in this Final Order and shall otherwise be junior only to: (i) with respect to the DIP ABL Priority Collateral, (1) Permitted Prior Liens; (2) the DIP ABL Liens; and (3) the Prepetition ABL Liens; and (ii) with respect to the DIP Term Priority Collateral, (1) Permitted Prior Liens; (2) the DIP Term Loan Liens; (3) the Prepetition Term Loan Liens; (4) the Prepetition Term Loan Adequate Protection Liens; (5) the DIP ABL Liens; and (6) the Prepetition ABL Liens.  The Prepetition ABL Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(b)     The Prepetition Term Loan Adequate Protection Liens shall be subject to the Carve Out as set forth in this Final Order and shall otherwise be junior only to: (i) with respect to the DIP ABL Priority Collateral (1) Permitted Prior Liens; (2) the DIP ABL Liens; (3) the Prepetition ABL Liens; (4) the Prepetition ABL Adequate Protection Liens; (5) the DIP Term Loan Liens; and (6) the Prepetition Term Loan Liens; and (ii) with respect to the DIP Term Priority Collateral (1) Permitted Prior Liens; (2) the DIP Term Loan Liens; and (3) the Prepetition Term Loan Liens.  The Prepetition Term Loan Adequate Protection Liens shall be

senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(c)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

14.    Adequate Protection Superpriority Claims.

(a)    *Prepetition ABL Superpriority Claim*.  Subject and subordinate to the Carve Out as set forth in this Final Order, as further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Administrative Agent, on behalf of itself and the Prepetition ABL Parties, is hereby granted on a final basis as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition ABL Superpriority Claim").

(b)    *Prepetition Term Loan Superpriority Claim*.  Subject and subordinate to the Carve Out as set forth in this Final Order, as further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Parties, is hereby granted on a final

basis as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition Term Loan Superpriority Claim," and together with the Prepetition ABL Superpriority Claim, the "Adequate Protection Superpriority Claims"); *provided* that the Prepetition Term Loan Parties shall not be entitled to any Prepetition Term Loan Superpriority Claims on account of any Diminution in Value arising from the DIP Term Roll-Up Loans.

15.    Priority of the Adequate Protection Superpriority Claims.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code; *provided, however*, that the Adequate Protection Superpriority Claims shall be *pari passu* with each other, without otherwise impairing the lien priorities as set forth herein, and subject to the Carve Out as set forth in this Final Order and junior to the DIP Superpriority Claims.

16.    Adequate Protection Payments and Protections for Prepetition ABL Parties.  Subject to the Carve Out as set forth in this Final Order, as further adequate protection (the "Prepetition ABL Adequate Protection Payments"), the Debtors are authorized and directed on a final basis to provide adequate protection to the Prepetition ABL Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (i) outstanding Prepetition ABL Obligations (solely to the extent that any remained outstanding after entry of the Interim Order), (ii) to the extent not paid upon entry of the Interim Order, payment of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and

disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agents arising prior to the Petition Date, and (iii) the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agents arising on or subsequent to the Petition Date; *provided, however*, that during the continuance of an Event of Default, any such payments to the Prepetition ABL Agents shall be made solely from DIP ABL Priority Collateral.  Immediately upon entry of the Interim Order, the Debtors were authorized and directed to pay to the Prepetition ABL Administrative Agent, for the benefit of the Prepetition ABL Parties, $500,000 into a non-interest bearing account maintained at Bank of America, N.A. (the "Prepetition ABL Indemnity Reserve") to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition ABL Documents (the "Prepetition ABL Indemnity Obligations").  (A) The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition ABL Agents and the Prepetition ABL Lenders in connection with or responding to (1) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 43 hereof, or (2) any Challenge (as defined herein) against the Prepetition ABL Agents or Prepetition ABL Lenders related to the Prepetition ABL Documents, the Prepetition ABL Obligations, or the Prepetition ABL Liens granted to the Prepetition ABL Administrative Agent, as applicable, whether in these Cases or independently in another forum, court, or venue; (B) the Prepetition ABL Indemnity Obligations shall be secured by a first lien on the Prepetition ABL Indemnity Reserve and the funds therein

and by a lien on the Prepetition Collateral (subject in all respects to the Intercreditor Agreement); (C) subject to paragraph 36 below, the Prepetition ABL Administrative Agent may apply amounts in the Prepetition ABL Indemnity Reserve against the Prepetition ABL Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this Court; and (D) until the Challenge Deadline (as defined herein), the Prepetition ABL Administrative Agent (for itself and on behalf of the Prepetition ABL Parties) shall retain and maintain the Prepetition ABL Liens granted to the Prepetition ABL Administrative Agent as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Reserve; *provided*, that (i) any such indemnification claims shall be subject to (a) the terms of the Prepetition ABL Documents (including with respect to application of proceeds) and (b) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 43 hereof, and (ii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s). The Prepetition ABL Indemnity Reserve shall be subject to the DIP Liens and the Adequate Protection Liens, subject to the priority set forth herein. The Prepetition ABL Indemnity Reserve shall be released and the funds applied in accordance with paragraph 24 of this Final Order upon the indefeasible payment in full in cash of the Prepetition ABL Indemnity Obligations and the receipt by the Prepetition ABL Administrative Agent and the Prepetition ABL Lenders of releases from the Debtors and their estates (including any applicable liquidator), with respect to any claims arising out of or related to the Prepetition ABL Agreement and the Prepetition ABL Documents, acceptable to the Prepetition ABL Administrative Agent and each other Prepetition ABL Lender in their sole

discretion.

          17.      Adequate Protection Payments and Protections for Prepetition Term Loan
Parties.  Subject to the Carve Out as set forth in this Final Order, as further adequate protection
(the "Prepetition Term Loan Adequate Protection Payments," and together with the Prepetition
ABL Adequate Protection Payments, the "Adequate Protection Payments"), the Debtors are
authorized and directed on a final basis to provide adequate protection to the Prepetition Term
Loan Parties in the form of payment in cash, without the need for the filing of formal fee
applications: (i) to the extent not paid upon entry of the Interim Order, the reasonable and
documented fees, out-of-pocket expenses, and disbursements (including the reasonable and
documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors,
auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan
Parties arising prior to the Petition Date; and (ii) the reasonable and documented fees, out-of-
pocket expenses, and disbursements (including the reasonable and documented fees, out-of-
pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party
consultants, and other vendors) incurred by the Prepetition Term Loan Parties arising on or
subsequent to the Petition Date; *provided, however*, that during the continuance of an Event of
Default, any such payments to the Prepetition Term Loan Parties shall be made solely from the
DIP Term Priority Collateral; *provided*, *further*, *however*, that any Prepetition Term Loan
Adequate Protection Payments that are not related to the DIP Term Loan Facility or the Backstop
Commitment Agreement (as defined in the DIP Term Loan Credit Agreement) shall be subject to
the Committee's right to seek recharacterization of such payments.  Immediately upon entry of
the Interim Order, the Debtors were authorized and directed to pay to the Prepetition Term Loan
Agent, for the benefit of the Prepetition Term Loan Lenders, $500,000 into a non-interest

41

bearing account maintained at the DIP Term Loan Agent (the "Prepetition Term Loan Indemnity Reserve") to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition Term Loan Documents (the "Prepetition Term Indemnity Obligations").   (A) The Prepetition Term Loan Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders in connection with or responding to (1) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 43 hereof, or (2) any Challenge against the Prepetition Term Loan Agent or Prepetition Term Loan Lenders related to the Prepetition Term Loan Documents, the Prepetition Term Loan Obligations, or the Prepetition Term Loan Liens granted to the Prepetition Term Loan Agent, as applicable, whether in these Cases or independently in another forum, court, or venue; (B) the Prepetition Term Indemnity Obligations shall be secured by a first lien on the Prepetition Term Loan Indemnity Reserve and the funds therein and by a lien on the Prepetition Collateral (subject in all respects to the Intercreditor Agreement); (C) subject to paragraph 36 below, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders may apply amounts in the Prepetition Term Loan Indemnity Reserve against the Prepetition Term Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this Court; and (D) until the Challenge Deadline, the Prepetition Term Loan Agent (for itself and on behalf of the Prepetition Term Loan Lenders) shall retain and maintain the Prepetition Term Loan Liens granted to the Prepetition Term Loan Agent as security for the amount of any Prepetition Term Indemnity Obligations not capable of being satisfied from application of the funds on deposit in

the Prepetition Term Loan Indemnity Reserve; *provided*, that (i) any such indemnification claims shall (a) be subject to the terms of the Prepetition Term Loan Documents and (b) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 43 hereof, and (ii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s). The Prepetition Term Loan Indemnity Reserve shall be subject to the DIP Liens and the Adequate Protection Liens, subject to the priority set forth herein. The Prepetition Term Loan Indemnity Reserve shall be released and the funds applied in accordance with paragraph 24 of this Final Order upon the indefeasible payment in full in cash of the Prepetition Term Loan Obligations and the receipt by the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders of releases from the Debtors and their estates (including any applicable liquidator), with respect to any claims arising out of or related to the Prepetition Term Loan Agreement and the Prepetition Term Loan Documents, acceptable to the Prepetition Term Loan Agent and each other Prepetition Term Loan Lender in their sole discretion.

18.    <u>Adequate Protection Reservation</u>. Subject to the Carve Out as set forth in this Final Order, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties under the Interim Order or this Final Order is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases. The receipt by the Prepetition Secured Parties of the adequate protection provided under the Interim Order and this Final Order shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected. Further, neither the Interim Order nor this Final Order shall prejudice or limit the rights of the Prepetition Secured Parties to

seek additional relief with respect to the use of Cash Collateral or for additional adequate

protection.

### Provisions Common to DIP Financing
### and use of Cash Collateral

19.    <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time

to time be amended, modified, or supplemented by the parties thereto without further order of the

Court if the amendment, modification, or supplement is (a) non-material and (b) in accordance

with the DIP Documents.  In the case of a material amendment, modification, or supplement to

the DIP Documents, the Debtors shall provide notice (which may be provided through electronic

mail or facsimile) to counsel to the Committee, the U.S. Trustee, and the DIP Agent not party to

such amendment, modification, or supplement (collectively, the "<u>Notice Parties</u>") promptly upon

the effectiveness of such amendment, modification, or supplement; *provided, however*, that

approval of the Court will be necessary to effectuate any such amendment, modification or

supplement; and *provided further* that such amendment, modification, or supplement shall be

without prejudice to the right of any party in interest to be heard.

20.    <u>Budget Maintenance</u>.  The use of borrowings and letters of credit under

the DIP Facilities and the use of Cash Collateral shall be in accordance with the Budget, subject

in all respects to the variances set forth in the DIP Agreements.  The Budget shall depict, on a

weekly and line item basis, (a) (i) projected cash receipts, (ii) projected disbursements (including

ordinary course operating expenses, bankruptcy-related expenses (including professional fees of

the Debtors' professionals and advisors), asset sales and any other fees and expenses relating to

the DIP Agreements, (iii) net cash flow, (iv) projected inventory receipts and levels, (v)

projected Tranche A Borrowing Base (as defined in the DIP ABL Agreement), FILO Borrowing

Base (as defined in the DIP ABL Agreement), ABL Term Borrowing Base (as defined in the DIP

ABL Agreement), Availability (as defined in the DIP ABL Agreement) and Combined Availability (as defined in the DIP ABL Agreement), (vi) total available liquidity, and (vii) professional fees and disbursements with respect to the Debtors' professionals; (b) a report, and any modification to, or amendment or update thereof (with any such modifications, amendments, or updates subject to the terms and conditions of the DIP Agreements), listing the stores subject to Specified Store Closing Sales (as defined in the DIP Agreements) and the other remaining stores to be produced at a time reasonably satisfactory to the DIP Agents; and (c) the other items set forth in the Budget and other information requested by the DIP Agents (which shall include a breakdown of stores being closed or proposed to be closed, which information with respect to such stores shall be limited to pro rata collections of such stores collected from the point of sale systems during the relevant period which correspond to cash collections described in, and determined in a manner consistent with, the Budget), for the first thirteen (13) week period from the Closing Date (as defined in the DIP Agreements). The Budget, and any modification to, or amendment or update thereof, shall be subject to the approval of, and in form and substance satisfactory to the DIP Agents and the Required Lenders (as defined in the DIP ABL Agreement) in their sole discretion. The Budget shall be updated, modified, or supplemented by the Debtors with the written consent of the DIP Agents and the Required Lenders, and upon the joint request of the DIP ABL Administrative Agent and the DIP Term Loan Agent from time to time (which request may be made in connection with any Transaction (as defined in the DIP ABL Agreement) or the commencement, or during the continuation, of the Specified Store Closing Sales), but in any event the Budget shall be updated by the Debtors (subject the approval of the DIP Agents and Required Lenders) not less than one time in each four (4) consecutive week period. Each such updated, modified, or supplemented budget shall be approved in writing by,

and shall be in form and substance reasonably satisfactory to, the DIP Agents and the Required

Lenders, in each of their sole discretion.  No such updated, modified, or supplemented budget

shall be effective until so approved and once so approved shall be deemed the "Budget";

*provided, however*, that in the event the DIP Agents and the Required Lenders, on the one hand,

and the Debtors, on the other hand, cannot agree as to an updated, modified, or supplemented

budget, such disagreement shall give rise to an Event of Default under the DIP Agreements once

the period covered by the prior Budget has terminated.  Each Budget delivered to the DIP Agents

shall be accompanied by such supporting documentation as reasonably requested by the DIP

ABL Administrative Agent and the DIP Term Loan Agent and shall be prepared in good faith

based upon assumptions the Debtors believe to be reasonable.  A copy of any Budget (or updated

Budget) shall be delivered to counsel for the Committee and the U.S. Trustee after (or if) it has

been approved by the DIP Agents.

21.     Budget Compliance.   The Debtors shall at all times comply with the

Budget, subject to the variances set forth in the DIP Agreements.  The Debtors shall provide all

reports and other information as required in the DIP Agreements (subject to the grace periods

provided therein).  The Debtors' failure to comply with the Budget (including the variances set

forth in the DIP Agreements) or to provide the reports and other information required in the DIP

Agreements shall constitute an Event of Default (as defined herein), following the expiration of

any applicable grace period set forth in the DIP Agreements.

22.     Modification of Automatic Stay.   The automatic stay imposed under

section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the

terms and provisions of this Final Order, including to: (a) permit the Debtors to grant on a final

basis the DIP Liens, Adequate Protection Liens, DIP Superiority Claims, and Adequate

Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP ABL Administrative Agent, the DIP Term Loan Agent, the Prepetition ABL Administrative Agent and the Prepetition Term Loan Agent each may reasonably request to assure the perfection and priority of the liens granted under the Interim Order and this Final Order; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agents, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facilities, the Interim Order and this Final Order; (d) authorize the Debtors to pay, and the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of the Interim Order and this Final Order; and (e) permit any Prepetition Term Loan Party to that certain Restructuring Support Agreement dated as of June 11, 2017 (as amended, the "Restructuring Support Agreement") to take any actions authorized under the Restructuring Support Agreement, including to take steps necessary (including sending any notice contemplated thereunder) to effectuate its termination, in each case, without the need to seek or obtain further relief from the Court.

23.     Perfection of DIP Liens and Adequate Protection Liens.  The Interim Order is sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted therein and confirmed herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Adequate Protection Liens, or to entitle the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties to the priorities granted herein.

Notwithstanding the foregoing, each of the DIP ABL Administrative Agent, DIP Term Loan

Agent, Prepetition ABL Administrative Agent and Prepetition Term Loan Agent is authorized to

file, as it in its sole discretion deems necessary or advisable, such financing statements, security

agreements, mortgages, notices of liens, and other similar documents to perfect in accordance

with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate

Protection Liens, and all such financing statements, mortgages, notices, and other documents

shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that

no such filing or recordation shall be necessary or required in order to create or perfect the DIP

Liens or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and

deliver promptly upon demand to the DIP ABL Administrative Agent, the DIP Term Loan

Agent, the Prepetition ABL Administrative Agent and the Prepetition Term Loan Agent all such

financing statements, mortgages, notices, and other documents as the DIP ABL Administrative

Agent, the DIP Term Loan Agent, the Prepetition ABL Administrative Agent and the Prepetition

Term Loan Agent may reasonably request.  Each of the DIP ABL Administrative Agent, the DIP

Term Loan Agent, the Prepetition ABL Administrative Agent and the Prepetition Term Loan

Agent, in its discretion, may file a photocopy of this Final Order as a financing statement with

any filing or recording office or with any registry of deeds or similar office, in addition to or in

lieu of such financing statements, notices of lien, or similar instrument.  To the extent that the

Prepetition ABL Administrative Agent or the Prepetition Term Loan Agent is the secured party

under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card

processor notices or agreements, bailee letters, custom broker agreements, financing statement,

account control agreements, or any other Prepetition Documents or is listed as loss payee or

additional insured under any of the Debtors' insurance policies, the DIP ABL Administrative

Agent and the DIP Term Loan Agent (as applicable) shall also be deemed to be the secured party

under such documents or to be the loss payee or additional insured, as applicable.    The

Prepetition ABL Administrative Agent and the Prepetition Term Loan Agent shall serve as

agents for the DIP ABL Administrative Agent and the DIP Term Loan Agent for purposes of

perfecting the DIP ABL Administrative Agent's and the DIP Term Loan Agent's liens on all DIP

Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type

such that perfection of a lien therein may be accomplished only by possession or control by a

secured party.

24.    _Application of Proceeds of Collateral._    As a condition to the continued

extension of credit under the DIP Facilities and the continued authorization to use Cash

Collateral, the Debtors have agreed that as of and commencing on the date of the Interim

Hearing, the Debtors shall apply all Net Proceeds (as defined in the DIP Agreements), Cash

Receipts (as defined in the DIP Agreements) and other payments received by the DIP Agents,

and all proceeds of Collateral (as defined in the DIP Agreements), including whether sold in the

ordinary course, liquidated pursuant to the Specified Store Closing Sales, or otherwise, subject to

applicable reinvestment rights (if any) and thresholds in the DIP Agreements and subject to the

applicable prepayment provisions therein, after reserving up to $160,500 for the claims of

Certain Texas Authorities[5] that are secured by Permitted Prior Liens, as follows: (a) with respect

to DIP ABL Priority Collateral, _first_, as provided in the DIP ABL Agreement, and _second_, after

---

[5]    "Certain Texas Authorities" means Allen ISD, Bexar County, Cameron County, Cypress-Fairbanks
ISD, Dallas County, El Paso, Fort Bend County, Frisco, Galveston County, Harris County, Hidalgo
County, Jefferson County, Kaufman County, Lewisville ISD, McAllen, Montgomery County, Nueces
County, San Marcos CISD, Smith County, Tarrant County and Victoria County.    The establishment
of a reserve for the Certain Texas Authorities is solely for the purpose of providing adequate
protection and shall constitute neither the allowance of any claims of the Certain Texas Authorities,
nor a floor or cap on the amounts the Certain Texas Authorities may be entitled to receive.    All
parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by
the Certain Texas Authorities are fully preserved.

the indefeasible repayment in full in cash of the Prepetition ABL Obligations and the DIP ABL

Obligations (including, in each case, provision for contingent obligations) and the termination of

the DIP ABL Credit Facility, as provided in the DIP Term Loan Agreement; and (b) with respect

to DIP Term Priority Collateral, _first_, as provided in the DIP Term Loan Credit Agreement, and

_second_, after the indefeasible repayment in full in cash of the Prepetition Term Loan Obligations

and the DIP Term Loan Obligations (including, in each case, provision for contingent

obligations) and the termination of the DIP Term Loan Facility, as provided in the DIP ABL

Agreement.

        25.      Protections of Rights of DIP Agents, DIP Lenders and Prepetition Secured

Parties.

        (a)      Unless the DIP Agents and the Prepetition Agents shall have

provided their prior written consent, or all DIP Obligations and all Prepetition Secured

Obligations (excluding contingent indemnification obligations for which no claim has been

asserted) have been indefeasibly paid in full in cash and the lending commitments under the DIP

Facilities have terminated, there shall not be entered in any of these Cases or any Successor

Cases any order (including any order confirming any plan of reorganization or liquidation) that

authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is

secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the

DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in

each case that is superior to or _pari passu_ with the DIP Liens, the DIP Superpriority Claims, the

Prepetition Liens, the Prepetition Adequate Protection Liens, and/or the Adequate Protection

Superpriority Claims except as expressly set forth in this Final Order or the DIP Documents; (ii)

the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this

Final Order; *provided*, *however*, that the consent of the DIP ABL Term Agent and the Prepetition

ABL Term Agent shall only be required to the extent that such use of Cash Collateral would not

result in a "Conforming DIP" as defined in Section 7.06 of the Prepetition ABL Agreement; (iii)

the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods

on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking

any setoff or recoupment against any of its prepetition indebtedness based upon any such return

of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification

of any of the DIP Agents', the DIP Lenders', or the Prepetition Secured Parties' rights under the

Interim Order, this Final Order, the DIP Documents or the Prepetition Documents with respect to

any DIP Obligations or Prepetition Secured Obligations.

(b)     The Debtors will, whether or not the DIP Obligations (excluding

contingent indemnification obligations for which no claim has been asserted) have been

indefeasibly paid in full in cash, (i) maintain books, records, and accounts to the extent and as

required by the DIP Documents (and subject to the applicable grace periods set forth therein); (ii)

reasonably cooperate with, consult with, and provide to the DIP Agents all such information and

documents that any or all of the Debtors are obligated (including upon reasonable request by any

of the DIP Agents) to provide under the DIP Documents or the provisions of the Interim Order or

this Final Order; (iii) upon reasonable advance notice, permit the DIP Agents, the DIP Lenders

and the Agent Advisors (as defined in the DIP Agreements) of each of the DIP Agents and

Prepetition Agents to visit and inspect any of the Debtors' respective properties, to examine and

make abstracts or copies from any of their respective books and records, to tour the Debtors'

business premises and other properties, and to discuss, and provide advice with respect to, their

respective affairs, finances, properties, business operations, and accounts with their respective

officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Documents; (iv) permit the DIP Agents, the Prepetition Agents and the Agent Advisors to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (v) upon reasonable advance notice, permit the DIP ABL Administrative Agent, the DIP Term Loan Agent, the Prepetition ABL Administrative Agent and the Prepetition Term Loan Agent to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral in accordance with the DIP Documents and the Prepetition Documents.

(c)     No Debtor shall object to any DIP Lenders or any Prepetition Secured Parties credit bidding up to the full amount of the applicable outstanding DIP Obligations, Prepetition ABL Obligations (as applicable), and Prepetition Term Loan Obligations (as applicable), in each case including any accrued interest and expenses, in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

26.     Credit Bidding.  In connection with any sale process authorized by the Court, the DIP Agents, the DIP Lenders, and Prepetition Secured Parties may credit bid some or all of their claims for their respective priority collateral (each a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code, subject in each case to the rights and duties of the parties under the Intercreditor Agreement and Prepetition Documents (including the "Specified Release Paragraph" in section 9.01 of the Prepetition ABL Agreement) and to the provision of

consideration sufficient to pay in full in cash any senior liens on the collateral that is subject to

the Credit Bid.  Each of the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties

shall be considered a "Qualified Bidder" with respect to its rights to submit a Credit Bid.

27.     Proceeds of Subsequent Financing.   If the Debtors, any trustee, any

examiner with expanded powers, or any responsible officer subsequently appointed in these

Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code

sections 364(b), 364(c), or 364(d) or in violation of the DIP Documents at any time prior to the

indefeasible repayment in full of all DIP Obligations and Prepetition Secured Obligations, and

the termination of the DIP Agents' and the DIP Lenders' obligation to extend credit under the

DIP Facilities, including subsequent to the confirmation of any plan with respect to any or all of

the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then

all the cash proceeds derived from such credit or debt shall immediately be turned over to the

DIP ABL Administrative Agent and the DIP Term loan Agent, as applicable, to be applied in

accordance with this Final Order and the DIP Documents.

28.     Cash Collection.

(a)     From and after the date of the entry of the Interim Order, all

collections and proceeds of any DIP ABL Priority Collateral or Prepetition ABL Priority

Collateral or services provided by any Debtor and all Cash Collateral (except as otherwise set

forth in the DIP ABL Agreement) that shall at any time come into the possession, custody, or

control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall

be promptly deposited in the same lock-box and/or deposit accounts into which the collections

and proceeds of the Prepetition ABL Priority Collateral were deposited under the Prepetition

Documents (or in such other accounts as are designated by the DIP ABL Administrative Agent

from time to time) (collectively, the "Cash Collection Accounts"), which accounts (except as otherwise set forth in the DIP ABL Agreement) shall be subject to the sole dominion and control of the DIP ABL Administrative Agent.  All proceeds and other amounts in the Cash Collection Accounts shall be remitted to the DIP ABL Administrative Agent for application in accordance with the DIP ABL Documents and this Final Order.  Unless otherwise agreed to in writing by the DIP ABL Administrative Agent, the DIP Term Loan Agent, the Prepetition ABL Administrative Agent and the Prepetition Term Loan Agent, or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in the cash management order entered by the Court on June 12, 2017 (the "Cash Management Order").  The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in the Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP ABL Administrative Agent.

(b)      Notwithstanding anything in this Final Order or any of the DIP Documents, (i) upon any draw under the DIP Term Loan Facility, the DIP Term Lenders shall deposit the proceeds of the DIP Term Loan Facility into a segregated deposit account furnished by a depository bank acceptable to the DIP Term Loan Agent and such account shall be in the name of the DIP Term Loan Agent subject to the sole dominion and control of the DIP Term Loan Agent (such account, the "DIP Term Funding Account"); the DIP Term Funding Account shall not be subject to a security interest or a lien of the DIP Term Loan Agent in favor of the Prepetition ABL Parties or the DIP ABL Lenders; and (ii) the Debtors' use of the proceeds in the DIP Term Funding Account shall be subject to this Final Order and the DIP Term Loan Documents.  The Debtors may make weekly withdrawals from the DIP Term Funding Account

subject to the conditions set forth in the DIP Term Loan Agreement and this Final Order, which proceeds shall be deposited into the Segregated Operating Account.

(c)     From and after the date of the entry of the Interim Order, all collections and proceeds of any DIP Term Priority Collateral or Prepetition Term Priority Collateral or services provided by any Debtor and any Cash Collateral that is DIP Term Priority Collateral or Prepetition Term Priority Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall promptly be deposited in the Segregated Operating Account, which shall be subject to the sole dominion and control of the DIP Term Loan Agent and which shall constitute DIP Term Priority Collateral, subject to the priorities set forth in this Final Order; the Debtors' use of the proceeds in the Segregated Operating Account shall be subject to this Final Order and the DIP Term Loan Documents.

29.     <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full of all DIP Obligations, all Prepetition Secured Obligations, and the termination of the DIP Agents' and the DIP Lenders' obligation to extend credit under the DIP Facilities, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facilities; and (b) maintain the cash management system in effect as of the Petition Date, as modified by the Cash Management Order, or as otherwise required by the DIP Documents or this Final Order.

30.     <u>Disposition of DIP Collateral</u>.

(i)     The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Priority Collateral or Prepetition ABL Priority Collateral other than in the ordinary course of business without the prior written consent of the DIP ABL Administrative Agent and the Prepetition ABL Administrative Agent (and no such consent shall

be implied, from any other action, inaction or acquiescence by the DIP ABL Administrative

Agent, the DIP ABL Lenders, the Prepetition ABL Administrative Agent, or the Prepetition ABL

Parties, or from any order of this Court), except as otherwise provided for in the DIP ABL

Documents or otherwise ordered by the Court, and subject to the Intercreditor Agreement.

(ii)    The Debtors shall not sell, transfer, lease, encumber, or otherwise

dispose of any portion of the DIP Term Priority Collateral or Prepetition Term Priority Collateral

other than in the ordinary course of business without the prior written consent of the DIP Term

Loan Agent and the Prepetition Term Loan Agent (and no such consent shall be implied, from

any other action, inaction, or acquiescence by the DIP Term Loan Agent, the DIP Term Loan

Lenders, the Prepetition Term Loan Agent, or the Prepetition Term Loan Parties, or from any

order of this Court), except as otherwise provided for in the DIP Term Loan Documents or

otherwise ordered by the Court, and subject to the Intercreditor Agreement.

31.    <u>DIP Termination Date</u>.  On the applicable DIP Termination Date: (a) all

applicable DIP Obligations shall be immediately due and payable, all commitments to extend

credit under the applicable DIP Facilities will terminate, other than as required in paragraph 40

with respect to the Carve Out, all treasury and cash management, hedging obligations and bank

product obligations constituting Obligations (as defined in the DIP ABL Agreement) shall be

cash collateralized, and all letters of credit and bankers' acceptances outstanding shall be cash

collateralized in an amount equal to 103% of the face amount thereof, and such cash collateral

shall not be subject to or subordinate to the Carve Out; (b) all authority to use Cash Collateral

shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the

Debtors may use Cash Collateral to pay payroll and other expenses that the DIP ABL

Administrative Agent and the DIP Term Loan Agent approve as critical to the administration of

56

the Debtors' estates in accordance with the Budget as determined by each DIP Agent in its sole

discretion; and (c) otherwise exercise rights and remedies under the DIP Documents in

accordance with this Final Order (including paragraph 34). For the purposes of this Final Order,

the "DIP Termination Date" shall mean the "Termination Date" as defined in the DIP ABL

Agreement and the "Maturity Date" as defined in the DIP Term Loan Agreement, as applicable.

32.    Events of Default. The occurrence of any of the following events, unless

waived by the DIP ABL Administrative Agent and the DIP Term Loan Agent in writing and in

accordance with the terms of the DIP Agreements, shall constitute an event of default

(collectively, the "Events of Default"): (a) the failure of the Debtors to perform, in any respect,

any of the terms, provisions, conditions, covenants, or obligations under this Final Order; or (b)

the occurrence of an "Event of Default" under either of the DIP Agreements.

33.    Milestones. As a condition to the DIP Facilities and the use of Cash

Collateral, the Debtors shall comply with the Required Milestones (as defined on Schedule 5.19

to the DIP ABL Agreement attached as Exhibit B to the DIP Motion), which is set forth on

Schedule 2 hereto (the "Case Milestones"). For the avoidance of doubt, the failure of the

Debtors to comply with any of the Case Milestones shall (a) constitute an Event of Default under

(i) each of the DIP Agreements and (ii) this Final Order; and (b) subject to the expiration of the

Remedies Notice Period (as defined below), result in the automatic termination of the Debtors'

authority to use Cash Collateral under this Final Order; and (c) permit the DIP ABL

Administrative Agent and the DIP Term Loan Agent, subject to paragraph 34, to exercise the

rights and remedies provided for in this Final Order and the DIP Documents.

34.    Rights and Remedies Upon Event of Default. Immediately upon the

occurrence and during the continuation of an Event of Default under any of the DIP Documents,

notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order (and the Remedies Notice Period) (a) each of the DIP ABL Administrative Agent and the DIP Term Loan Agent may declare (any such declaration shall be referred to herein as a "Termination Declaration") (i) all DIP Obligations owing under the respective DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the respective DIP Facilities, (iii) termination of the respective DIP Credit Facilities and the respective DIP Documents as to any future liability or obligation of the applicable DIP Agents and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice (as defined herein) to the Company and the Loan Parties (as applicable); and (b) either the DIP ABL Administrative Agent (in the case of Cash Collateral of proceeds of the DIP ABL Priority Collateral) or the DIP Term Loan Agent (in the case of Cash Collateral of proceeds of the DIP Term Priority Collateral and proceeds in the DIP Term Funding Account and the Segregated Operating Account) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date shall be referred to herein as the "Termination Date").   The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the DIP ABL Agents (if delivered by the DIP Term Loan Agent), counsel to the DIP Term Loan Agent (if delivered by the DIP ABL Administrative Agent), counsel to the Committee, counsel to the Indenture Trustee, and the U.S. Trustee.   The automatic stay in the Cases otherwise applicable to the DIP ABL

Administrative, the DIP Term Loan Agent, the DIP Lenders, and the Prepetition Secured Parties

is hereby modified so that five (5) business days after the date a Termination Declaration is

delivered (the "Remedies Notice Period"): (a) the DIP ABL Administrative Agent or the DIP

Term Loan Agent (as applicable) and the applicable DIP Lenders shall be entitled to exercise

their rights and remedies in accordance with the respective DIP Documents and this Final Order

to satisfy the relevant DIP Obligations, DIP Superpriority Claim, and DIP Liens, subject to the

Carve Out; (b) the applicable Prepetition Secured Parties shall be entitled to exercise their rights

and remedies in accordance with the applicable Prepetition Documents and this Final Order to

satisfy the relevant Prepetition Secured Obligations, Adequate Prepetition Superpriority Claims,

and Prepetition Adequate Protection Liens, subject to the Carve Out.   During the Remedies

Notice Period, the Debtors and/or the Committee shall be entitled to seek an emergency hearing

within the Remedies Notice Period with the Court for the sole purpose of contesting whether an

Event of Default has occurred and/or is continuing, and the Debtors hereby waive their right to

and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code, to

the extent that such relief would in any way impair or restrict the rights and remedies of the DIP

ABL Administrative Agent, the DIP Term Loan, the DIP Lenders, or the Prepetition Secured

Parties.   Unless the Court orders otherwise, the automatic stay, as to DIP ABL Administrative

Agent, the DIP Term Loan Agent, the DIP Lenders, and the Prepetition Secured Parties, shall

automatically be terminated at the end of the Remedies Notice Period without further notice or

order.   Upon expiration of the Remedies Notice Period, the DIP ABL Administrative Agent, the

DIP Term Loan Agent, the DIP Lenders, and the Prepetition Secured Parties shall be permitted

to exercise all remedies set forth herein, in the DIP Documents, the Prepetition Documents, and

as otherwise available at law without further order of or application or motion to the Court

consistent with the Intercreditor Agreement and paragraph 30 of this Final Order.  In addition, if a Specified Sale Process Default (as defined in the DIP ABL Agreement) occurs and is continuing, the DIP ABL Administrative Agent may direct the Debtors to commence a process for a sale of all of the Debtors' assets (the "Sales Process"), at which time: (a) within one (1) business day after the Remedies Notice Period expires, the Debtors must obtain entry of an order from the Court, in form and substance approved by the DIP ABL Administrative Agent, either (x) designating a liquidating stalking horse bidder consented to by the DIP ABL Administrative Agent and approving bidding and sales procedures with respect to the Sales Process or (y) determining that a Specified Sale Process Default has not occurred and/or is not continuing; (b) within three (3) business days after the Remedies Notice Period expires, complete an auction for the Sales Process and declare a "successful bidder" for the Sales Process on terms and conditions consented to by the DIP ABL Administrative Agent; (c) within five (5) business days after the Remedies Notice Period expires, obtain entry of a final order from the Court, in form and substance acceptable to the DIP ABL Administrative Agent, approving the Sales Process; and (d) within seven (7) business days after the Remedies Notice Period expires, execute an agency agreement approved by the DIP ABL Administrative Agent in connection with the Sales Process and commence the Sales Process pursuant to the approved agency agreement and the applicable Court order.  Until such time as the Sales Process is complete and the proceeds of DIP ABL Priority Collateral have been remitted to the DIP ABL Administrative Agent for the benefit of the DIP ABL Lenders and the proceeds of DIP Term Priority Collateral have been remitted to the DIP Term Loan Agent and the DIP Term Loan Lenders, any exercise of remedies by the DIP Term Agent and the DIP Term Lenders shall be in accordance with the Intercreditor Agreement and paragraph 30 of this Final Order.  Upon the occurrence and during the continuation of an

Event of Default, the DIP ABL Administrative Agent and any liquidator or other professional

will have the right to access and utilize, at no cost or expense, any trade names, trademarks,

copyrights or other intellectual property and any warehouse, distribution centers, store or other

locations to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any

of the DIP ABL Priority Collateral, including pursuant to any Court approved sale process.

Access to the Debtors' leased premises shall be subject to the provisions of paragraph 48 of this

Final Order.

35.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No
Modification or Stay of Final Order</u>.  The DIP Agents, the DIP Lenders, and the Prepetition

Secured Parties have acted in good faith in connection with the Interim Order and this Final

Order and are entitled to rely upon the protections granted herein and by section 364(e) of the

Bankruptcy Code.  Based on the findings set forth in this Final Order and the record made during

the Interim and Final Hearings, and in accordance with section 364(e) of the Bankruptcy Code,

in the event any or all of the provisions of the Interim Order or this Final Order are hereafter

modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP

Agents, the DIP Lenders, and the Prepetition Secured Parties are entitled to the protections

provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or

vacatur shall not affect the validity and enforceability of any advances previously made or made

hereunder, or lien, claim, or priority authorized or created hereby.

36.     <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay

all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of

the DIP Agents and the DIP Lenders in connection with the DIP Facilities, as provided in the

DIP Documents, whether or not the transactions contemplated hereby are consummated,

including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and

expenses of other consultants, and indemnification and reimbursement of fees and expenses.

Payment of all such fees and expenses shall not be subject to allowance by the Court.

Professionals for the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties shall not

be required to comply with the U.S. Trustee fee guidelines.  Any time that such professionals

seek payment of fees and expenses from the Debtors, each professional shall provide summary

time records with timekeepers, rates, hours, and a summary of tasks completed during the

relevant time period  (which shall not be required to contain time entries and which may be

redacted or modified to the extent necessary to delete any information subject to the attorney-

client privilege, any information constituting attorney work product, or any other confidential

information, and the provision of such invoices shall not constitute any waiver of the attorney

client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and

counsel for the Committee contemporaneously with the delivery of such fee and expense

statements to the Debtors.   Any objections raised by the Debtors, the U.S. Trustee or the

Committee with respect to such invoices within ten (10) days of the receipt thereof will be

subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such

invoice will be paid promptly by the Debtors.  Notwithstanding the foregoing, the Debtors were

authorized and directed to pay on the Closing Date all reasonable and documented fees, costs,

and out-of-pocket expenses of the DIP Agents, the DIP Lenders, and the Prepetition Secured

Parties incurred on or prior to such date without the need for any professional engaged by the

DIP Agents, the DIP Lenders, or the Prepetition Secured Parties to first deliver a copy of its

invoice as provided for herein.  No attorney or advisor to the DIP Agents, the DIP Lenders or

any Prepetition Secured Party shall be required to file an application seeking compensation for

services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the (i) DIP Agents or DIP Lenders in connection with or with respect to the DIP Facilities; and (ii) Prepetition Secured Parties in connection or with respect to these matters, are hereby approved in full.

37.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Agents and the DIP Lenders in accordance with the terms and conditions of the DIP Agreements. Upon the earlier of (A) payment in full in cash of the DIP ABL Obligations or (B) conclusion of the Remedies Notice Period, the Debtors shall pay $500,000 from proceeds of the DIP Collateral into an indemnity account (the "<u>DIP ABL Indemnity Account</u>") subject to first priority liens of the DIP ABL Administrative Agent, for the benefit of the DIP ABL Lenders.  The DIP ABL Indemnity Account shall be released and the funds applied in accordance with paragraph 24 of this Final Order upon the indefeasible payment in full in cash of the DIP ABL Obligations and the receipt by the DIP ABL Administrative Agent and each of the DIP ABL Lenders of releases from the Debtors and their estates, with respect to any claims arising out of or related to the DIP ABL Documents, acceptable to the DIP ABL Administrative Agent and the DIP ABL Lenders, each in their sole discretion.  Upon the earlier of (A) payment in full in cash of the DIP Term Loan Obligations or (B) conclusion of the Remedies Notice Period, the Debtors shall pay $500,000 from proceeds of the DIP Collateral into an indemnity account (the "<u>DIP Term Loan Indemnity Account</u>") subject to first priority liens of the DIP Term Loan Agent, for the benefit of the DIP Term Loan Lenders.  The DIP Term Loan Indemnity Account shall be released and the funds applied in accordance with paragraph 24 of this Final Order upon the indefeasible payment in full in cash of the DIP Term Loan Obligations and the receipt by the DIP Term Loan Agent and each of the DIP Term Loan Lenders of releases from the Debtors and their estates, with

respect to any claims arising out of or related to the DIP Term Loan Documents, acceptable to the DIP Term Loan Agent and the DIP Term Loan Lenders, each in their sole discretion.

38.    <u>Proofs of Claim</u>.  The DIP ABL Administrative Agent, the DIP Term Loan Agent, the DIP Lenders, and the Prepetition Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, each of (a) the Prepetition ABL Administrative Agent on behalf of itself and the Prepetition ABL Parties and (b) the Prepetition Term Loan Agent on behalf of itself and the Prepetition Term Loan Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any claim allowed herein.   Any proof of claim filed by the Prepetition ABL Administrative Agent or the Prepetition Term Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Parties or the Prepetition Term Loan Parties, respectively.   Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties.

39.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Agents and the DIP Lenders under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agents (and so long as an Event of Default has occurred and is continuing, each DIP Lender), the Prepetition Agents, and the Committee reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and Prepetition Documents,

as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants, including Alix Partners LLC and Lazard Frères & Co. LLC to cooperate, consult with, and provide to the DIP Agents (and so long as an Event of Default has occurred and is continuing, each DIP Lender) and the Prepetition Agents all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Company, Holdings or the Loan Parties.

40.    <u>Carve Out</u>.

(a)    *Carve Out.*  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "<u>Chapter 7 Trustee Carve-Out</u>"); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise (and, in the case of the Committee Professionals (as defined below), subject to the Budget), all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and (subject to the Budget) any official committee appointed pursuant to section 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") at any time before or on the first business day following delivery by the DIP ABL Administrative Agent or the DIP Term Loan Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out

Trigger Notice (solely with respect to the DIP ABL Collateral, in an aggregate amount not to exceed the ABL Professional Fee Carve Out Cap (defined below)); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by the DIP ABL Administrative Agent or the DIP Term Loan Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").[6]  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP ABL Administrative Agent or the DIP Term Loan Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, the DIP ABL Administrative Agent or DIP Term Loan Agent (as applicable) and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP ABL Obligations or the DIP Term Loan Obligations under the DIP ABL Facility or the DIP Term Loan Facility, respectively, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    *Delivery of Weekly Fee Statements*.    Notwithstanding any provision in the DIP Term Loan Credit Agreement, not later than 5:00 p.m. San Francisco time on Thursday of each week starting with the second week following the Petition Date, each Professional Person shall deliver to the Debtors, the DIP Agents and the Prepetition ABL Agents a statement setting forth the amount and a description of the fees and expenses (collectively, "Professional Fees") incurred during the preceding week by such Professional Person through

---

[6] Notwithstanding the foregoing, at the election of the Debtors up to $500,000 of the Post-Carve Out Trigger Notice Cap may be used to pay Allowed Professional Fees of Professional Persons incurred prior to the delivery of a Carve Out Trigger Notice to the extent such Allowed Professional Fees exceed the ABL Professional Fee Carve Out Cap (as defined below).

Saturday of such week, the "Calculation Date"), along with a cumulative total and a statement of

the amount of such fees and expenses which have been paid to date by the Debtors (each such

statement, a "Weekly Statement"), *provided* that, within one business day of the occurrence of

the Termination Declaration Date (as defined below), each Professional Person shall deliver an

additional Weekly Statement (the "Final Statement") setting forth the amount and a description

of the fees and expenses incurred during the period commencing on the calendar day after the

prior Calculation Date and concluding on the Termination Declaration Date.  Solely as it relates

to the DIP ABL Administrative Agent, the DIP ABL Lenders, the Prepetition ABL

Administrative Agent and the Prepetition ABL Lenders, the Carve Out under paragraph (a)(iii)

above shall be limited to the greater of (x) the sum of (I) the aggregate unpaid amount of

Allowed Professional Fees included in such Weekly Statements timely received by the DIP ABL

Administrative Agent and the Prepetition ABL Administrative Agent prior to the Termination

Declaration Date (as defined below), *plus* (II) the lesser of (1) the aggregate unpaid amount of

Allowed Professional Fees included in the Final Statement timely received by the DIP ABL

Agent, the DIP Term Loan Agent, and the Prepetition ABL Agent pertaining to the period

through and including the Termination Declaration Date (as defined below) and (2) the Budgeted

Cushion Amount (as defined below) and (y) the aggregate unpaid amount of Allowed

Professional Fees included in the Budget for the period prior to the Termination Declaration Date

(such amount, the "ABL Professional Fee Carve Out Cap").  For the avoidance of doubt, the DIP

ABL Administrative Agent shall be entitled to at all times maintain, as part of the Availability

Reserve (as defined in the DIP ABL Agreement), a reserve in an amount not less than the sum of

(i) the then outstanding amount of the ABL Professional Fee Carve Out Cap, *plus* (ii) the Post-

Carve Out Trigger Notice Cap, *plus* (iii) the amounts contemplated under paragraph (a)(i) and

(a)(ii) above.  In addition, the DIP ABL Administrative Agent shall at all times be entitled to maintain, as part of the Reserves (as defined in the DIP ABL Agreement), a reserve in an amount equal to the amount of Professional Fees set forth in the Approved Budget for the then current week occurring after the most recent Calculation Date and the two weeks succeeding such current week (such amount (regardless of whether such reserve is maintained), the "Budgeted Cushion Amount").

(c)     *Carve Out Reserves*.  On the day on which a Carve Out Trigger Notice is given by either the DIP ABL Administrative Agent or the DIP Term Loan Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, the DIP ABL Administrative Agent or the DIP Term Loan Agent (as applicable) with a copy to counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall be deemed (i) a draw request and notice of borrowing by the Debtors for DIP Revolving Loans under the DIP ABL Agreement in an amount equal to the sum of (x) the amounts set forth in paragraphs (a)(i) and (a)(ii), above, and (y) the then unpaid amounts of the Allowed Professional Fees up to the ABL Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP Revolving Loans) and (ii) a draw request and notice of borrowing by the Debtors for DIP Term Loans under the DIP Term Loan Facility in an amount equal to the unpaid amounts of the Allowed Professional Fees in excess of the ABL Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP Term Loans).  To the extent amounts under preceding clause (i) are not funded as of the end of the second business day after the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand constituting proceeds of ABL Priority Collateral as of such date and any available cash constituting proceeds of ABL Priority Collateral thereafter held by any Debtor to

fund a reserve in an amount equal to the amount required to be funded pursuant to such clause (i) (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable DIP ABL Loans pursuant to clause (i) of this paragraph (c)).   To the extent amounts under preceding clause (ii) are not funded as of end of the second business day after the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand constituting proceeds of DIP Term Loan Priority Collateral as of such date and any available cash constituting proceeds of DIP Term Loan Priority Collateral thereafter held by any Debtor to fund a reserve in an amount equal to the amount required to be funded pursuant to such clause (ii) (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable DIP Term Loans pursuant to clause (ii) of this paragraph (c)).   The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Administrative Agent in trust exclusively to pay such unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve").   On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the Debtors for (x) DIP Revolving Loans under the DIP ABL Agreement in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Revolving Loans) and (y) to the extent not funded by the DIP ABL Lenders, for DIP Term Loans in an amount equal to any unfunded portion of the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Term Loans).   The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Administrative Agent in trust exclusively to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves").   On the next business day following the Termination Declaration Date

and the deemed requests for the making of DIP Revolving Loans and DIP Term Loans as provided in this paragraph (c), notwithstanding anything in the DIP ABL Agreement or the DIP Term Loan Agreement to the contrary, including with respect to (1) the existence of a Default (as defined in the DIP ABL Agreement or the DIP Term Loan Agreement) or Event of Default, (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the making of any DIP Revolving Loan under the DIP ABL Agreement or DIP Term Loans under the DIP Term Loan, respectively, (3) any termination of the Commitments (as defined in the DIP ABL Agreement) or Commitments (as defined in the DIP Term Loan Agreement) following an Event of Default, or (4) the occurrence of the Maturity Date, each DIP ABL Lender with a Commitment (as defined in the DIP ABL Agreement) and DIP Term Loan Lender with an outstanding Commitment (as defined in the DIP Term Loan Agreement) shall make available to the DIP ABL Administrative Agent or the DIP Term Loan Agent, as applicable, such DIP ABL Lender's or such DIP Term Loan Lender's pro rata share of such DIP Revolving Loans or DIP Term Loans, as applicable.

(d)     *Application of Carve Out Reserves.*

(i)     All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in subparagraphs (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii) below, all remaining funds shall be distributed *first* to the prepetition Revolving Credit Lenders (as defined in the Prepetition ABL Agreement) in accordance with their rights and priorities as of the Petition Date, and *thereafter* to the DIP ABL Administrative Agent on account of the Revolving Obligations (as

defined in the DIP ABL Agreement) until indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing Bank (as defined in the DIP ABL Agreement)).

(ii)      All funds in the Post-Carve Out Trigger Notice Reserve (other than up to $500,000, which may be used to pay Pre-Carve Out Amounts to the extent they exceed the ABL Professional Fee Carve Out Cap) shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts").  If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii) below, all remaining funds shall be distributed *first,* to the prepetition Revolving Credit Lenders in accordance with their rights and priorities as of the Petition Date, and *thereafter* to the DIP ABL Administrative Agent on account of the Revolving Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing Bank).

(iii)      Notwithstanding anything to the contrary in the DIP ABL Documents, the DIP Term Loan Documents, or this Final Order, (x) if either of the Carve Out Reserves required to be funded by the DIP ABL Lenders is not funded in full in the amounts set forth in this paragraph (d), then, any excess funds in one of the Carve Out Reserves held in any account funded by the DIP ABL Lenders following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts (subject to the limits contained in the ABL Professional Fee Carve Out Cap and the Post-Carve Out Trigger Notice Cap, respectively), respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding by the DIP ABL

Lenders prior to making any payments to the DIP ABL Agent or the Prepetition ABL Lenders, as applicable, and (y) if either of the Carve Out Reserves required to be funded by the DIP Term Loan Lenders is not funded in full in the amounts set forth in this paragraph (d), then, any excess funds in one of the Carve Out Reserves held in any account funded by the DIP Term Loan Lenders following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts (subject to DIP Term Commitment Cap and the Post-Carve Out Trigger Notice Cap, respectively), respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding by the DIP Term Loan Lenders prior to making any payments to the DIP Term Loan Agent or the Prepetition Term Loan Lenders, as applicable.

(iv)    (A) Notwithstanding anything to the contrary in the DIP ABL Documents or this Final Order, following two (2) business days after delivery of a Carve Out Trigger Notice, neither the DIP ABL Administrative Agent nor the Prepetition ABL Administrative Agent shall sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been funded in an amount equal to the sum of (x) the Post-Carve Out Trigger Notice Cap, plus (y) the amount of the ABL Professional Fee Carve Out Cap *plus* (z) the amounts contemplated under paragraph (a)(i) and (a)(ii) above, with any excess paid as provided in paragraphs (i) and (ii) above.  (B) Notwithstanding anything to the contrary in the DIP Term Loan Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Term Loan Agent and the Prepetition Term Loan Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the DIP Term Loan Agent shall have satisfied its obligation to fully fund the Carve Out Reserves in accordance with this Final Order.

(v)     Notwithstanding anything to the contrary in this Final Order, (i) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below) (*provided* that, in all cases the Carve Out priority with regard to the DIP ABL Collateral will always be subject to the limitations set forth in the definition of Carve Out), and (ii) subject to the limitations with respect to the DIP ABL Administrative Agent, Revolving Credit Lenders (as defined in the DIP ABL Agreement), Prepetition ABL Administrative Agent and prepetition Revolving Credit Lenders set forth in paragraph (b), above, in no way shall the Budget, any Approved Budget (as defined in the DIP ABL Agreement), Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Facilities, or in any Prepetition Secured Facilities, to the extent of any shortfall in the Carve Out Reserves, the Carve Out shall be senior to all liens and claims securing the DIP Facilities, the Adequate Protection Liens, and the Diminution in Value claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that that in all cases, the Carve Out priority with regard to the DIP ABL Collateral will always be subject to the limitations set forth in the definition of Carve Out.

(e)     *No Direct Obligation To Pay Allowed Professional Fees.*  The DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agents, the DIP

Lenders, the Issuing Banks, or the Prepetition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*.    Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(g)    *Payment of Carve Out On or After the Termination Declaration Date*.    Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.    Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Documents, the Bankruptcy Code, and applicable law.

41.    <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out</u>.  The DIP Facilities, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) except to contest the occurrence of an Event of Default, preventing, hindering, or delaying any of the DIP ABL Administrative Agent's, the DIP Term Loan Agent's, the DIP Lenders', or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral except as provided for in this Final Order and the DIP Documents; (c) selling or otherwise disposing of DIP Collateral without the consent of the DIP ABL Administrative Agent or the DIP Term Loan Agent (as applicable); (d) using or seeking to use any insurance proceeds

constituting DIP Collateral except as provided for in this Final Order and the DIP Documents without the consent of the DIP ABL Administrative Agent and the DIP Term Loan Agent; (e) incurring Indebtedness (as defined in the DIP ABL Agreement or the DIP Term Loan Agreement) without the prior consent of the DIP ABL Administrative Agent and the DIP Term Loan Agent, except to the extent permitted under the DIP Agreements; (f) seeking to amend or modify any of the rights granted to the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties under the Interim Order, this Final Order, the DIP Documents, or the Prepetition Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (g) objecting to or challenging in any way the DIP Liens, the DIP Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the DIP Collateral (including Cash Collateral) or, as the case may be, the Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP ABL Administrative Agent, the DIP Term Loan Agent, the DIP Lenders, or the Prepetition Secured Parties, respectively; (h) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (i) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, Prepetition Secured Obligations or any other rights or interests of any of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties; or (j) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that the Carve Out and such collateral proceeds and loans under

the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $175,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by the Committee, in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens within sixty (60) calendar days following the selection of counsel to the Committee.

42.     Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, as reflected in the most recent Budget provided by the Debtors to the DIP Agents.

43.     Effect of Stipulations on Third Parties.

(a)     *Generally*.  The admissions, stipulations, agreements, releases, and waivers set forth in this Final Order (collectively, the "Prepetition Lien and Claim Stipulations") are and shall be binding on the Debtors.  In addition, the Prepetition Lien and Claim Stipulations are and shall be binding on any trustee, responsible person, examiner with expanded powers, or any other estate representative, as well as on all creditors and parties in interest and all of their successors in interest and assigns, including the Committee, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed a motion seeking standing to commence a proceeding required under the Bankruptcy Code and

Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each

case subject to the limitations set forth in this paragraph 43) challenging the Prepetition Lien and

Claim Stipulations (each such proceeding or pleading commencing a proceeding or other

contested matter, a "Challenge") by no later than 90 days from the date of formation of the

Committee (the "Challenge Deadline"), as such applicable date may be extended in writing from

time to time in the sole discretion of the Prepetition ABL Administrative Agent (with respect to

the Prepetition ABL Documents) and the Prepetition Term Loan Agent (with respect to the

Prepetition Term Loan Documents), or by this Court for good cause shown pursuant to an

application filed by a party in interest prior to the expiration of the Challenge Deadline; *provided*

that, the Debtors and the DIP Lenders shall consent to expedited consideration of a motion

seeking standing to commence a Challenge brought during the Challenge Period, and (ii) this

Court enters judgment in favor of the plaintiff or movant in any such timely and properly

commenced Challenge proceeding and any such judgment has become a final judgment that is

not subject to any further review or appeal.  In the event the Committee files a standing motion

during the Challenge Period, the Challenge Period shall be tolled until the earlier of (i) five

calendar days after the entry of an order by the Bankruptcy Court granting such standing motion,

(ii) five calendar days after the entry of an order by the Bankruptcy Court denying such standing

motion, and (iii) the conclusion of the hearing on confirmation of a chapter 11 plan.

        (b)    *Binding Effect*.  To the extent no Challenge is timely and properly

commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final

and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien

and Claim Stipulations then, without further notice, motion, or application to, order of, or

hearing before, this Court and without the need or requirement to file any proof of claim, the

Prepetition Lien and Claim Stipulations shall, pursuant to this Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Stipulations shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Stipulations is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above, and only as to plaintiffs or movants that have complied with the terms hereof.  To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection.  Upon a successful Challenge brought pursuant to this paragraph 43, the Court may fashion any appropriate remedy.

44.     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

45.     Section 506(c) Claims.   No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP ABL Administrative Agent, the DIP Term Loan Agent, the DIP Lenders, the Prepetition ABL Administrative Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Agent or the

Prepetition Term Loan Lenders, or any of their respective claims, the DIP Collateral, or the

Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise,

without the prior written consent of the DIP ABL Administrative Agent, the DIP Term Loan

Agent, the DIP Lenders, the Prepetition ABL Administrative Agent, the Prepetition ABL

Lenders, the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders, as applicable,

and no such consent shall be implied from any other action, inaction, or acquiescence by any

such agents or lenders.

46.    No Marshaling/Applications of Proceeds.  The DIP ABL Administrative

Agent, the DIP Term Loan Agent, the DIP Lenders, the Prepetition ABL Administrative Agent,

the Prepetition ABL Lenders, the Prepetition Term Loan Agent and the Prepetition Term Loan

Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar

doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may

be, and proceeds shall be received and applied pursuant to this Final Order and the DIP

Documents notwithstanding any other agreement or provision to the contrary.

47.    Section 552(b).   The Prepetition ABL Administrative Agent, the

Prepetition ABL Lenders, the Prepetition Term Loan Agent and the Prepetition Term Loan

Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy

Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall

not apply to the Prepetition ABL Administrative Agent, the Prepetition ABL Lenders, the

Prepetition Term Loan Agent or the Prepetition Term Loan Lenders, with respect to proceeds,

product, offspring or profits of any of the Prepetition Collateral.

48.    Access to DIP Collateral.  Notwithstanding anything contained herein to

the contrary (but subject to the last sentence of this paragraph 48) and without limiting any other

rights or remedies of the DIP ABL Administrative Agent or the DIP Term Loan Agent exercisable on behalf of the DIP ABL Lenders and the DIP Term Loan Lenders, respectively, contained in this Final Order, the DIP ABL Documents, the DIP Term Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP ABL Documents and the DIP Term Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing, the DIP ABL Administrative Agent or the DIP Term Loan Agent, as applicable, may, subject to the applicable notice provisions, if any, in this Final Order and any separate applicable agreement by and between such landlord and the DIP ABL Administrative Agent or the DIP Term Loan Agent, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, *provided* that the DIP ABL Administrative Agent and/or the DIP Term Loan Agent, as applicable, shall be obligated only to pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP ABL Administrative Agent and/or the DIP Term Loan Agent, as applicable, calculated on a daily per diem basis.  Nothing herein shall require the DIP ABL Administrative Agent or the DIP Term Loan Agent to assume any lease as a condition to the rights afforded in this paragraph.  For the avoidance of doubt, subject to (and without waiver of) the rights of the DIP ABL Administrative Agent, the DIP Term Loan Agent and/or the DIP Lenders under applicable nonbankruptcy law, the DIP ABL Administrative Agent, the DIP Term Loan Agent and/or the DIP Lenders can only enter upon a leased premises after an Event of Default in accordance with (i) a separate agreement with the landlord at the applicable leased premises, or (ii) upon entry of an order of

this Court obtained by motion of the DIP ABL Administrative Agent, the DIP Term Loan Agent

and/or the DIP Lenders on such notice to the landlord as shall be required by this Court.

49.    <u>Postpetition Lease Obligations</u>.  Subject to the terms and conditions of the

DIP Agreements and this Final Order, and unless any creditor agrees to different treatment,

within 10 business days of the Debtors authorization to commence store closings in accordance

with the *Debtors Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to*

*Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III)*

*Granting Related Relief* [Docket No. 25] (the "<u>Store Closing Motion</u>"), the Debtors shall pay the

unpaid rent due under the leases for the period from June 11, 2017 through June 30, 2017

(the "<u>Stub Rent</u>") for the Closing Stores or Additional Closing Stores (each as defined in the

Store Closing Motion) to be paid within 10 business days of the Debtors' authorization to

commence Store Closings (as defined in the Store Closing Motion) at such Closing Stores or

Additional Closing Stores in accordance with the Store Closing Motion.  In addition, subject to

the terms and conditions of the DIP Agreements and this Final Order, and unless any creditor

agrees to different treatment, within 10 days of the effective date of the rejection of a real

property lease (or its natural expiration or termination, as may be applicable), the Debtors shall

pay to the applicable landlord the Stub Rent for such store as well.  The treatment of Stub Rent

set forth in this paragraph 49 is made solely in settlement of various claims and objections and

does not constitute an agreement by the Debtors, the DIP Agents, the DIP Lenders or the

Prepetition Secured Parties, nor does it constitute a finding by the Court, with respect to the

validity, priority, nature, or right to payment of any claims, including, without limitation, those

on account of Stub Rent.  The Debtors' and DIP Agents' rights with respect to the calculation of

Stub Rent for any particular Closing Stores are expressly preserved.

50.     <u>Limits on Lender Liability</u>.   Nothing in the Interim Order, this Final

Order, any of the DIP Documents, or any other documents related thereto shall in any way be

construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders

or the Prepetition Secured Parties of any liability for any claims arising from any activities by the

Debtors in the operation of their businesses or in connection with the administration of these

Cases.   The DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not, solely by

reason of having made loans under the DIP Facilities, be deemed in control of the operations of

the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the

operation or management of the Debtors (as such terms, or any similar terms, are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, 29

U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).   Nothing in the

Interim Order, this Final Order or the DIP Documents, shall in any way be construed or

interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders, or any of

the Prepetition Secured Parties of any liability for any claims arising from the prepetition or

postpetition activities of any of the Debtors before entry of this Final Order.

51.     <u>Insurance Proceeds and Policies</u>.   As of entry of the Interim Order and to

the fullest extent provided by applicable law, the DIP ABL Administrative Agent (on behalf of

the DIP ABL Lenders), the DIP Term Loan Agent (on behalf of the DIP Term Loan Lenders),

the Prepetition ABL Administrative Agent (on behalf of the Prepetition ABL Lenders), and the

Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders), are deemed to

be, without any further action or notice, named as additional insured and loss payee on each

insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

52.     <u>Joint and Several Liability</u>.   Nothing in this Final Order shall be construed

to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Company, Holdings and the Loan Parties shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facilities and the DIP Documents.

53.    <u>No Superior Rights of Reclamation</u>.    Based on the findings and rulings herein regarding the integrated nature of the DIP Facilities and the Prepetition Documents and the relation back of the DIP Liens, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

54.    <u>Rights Preserved</u>.    Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Prepetition Documents and the Intercreditor Agreement: (a) the DIP Agents', the DIP Lenders' and the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agents, the DIP Lenders, and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties.    Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly,

the Debtors', the Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

55.   <u>Chubb Reservation of Rights</u>.  For the avoidance of doubt, (i) to the extent ACE American Insurance Company and/or any of its affiliates (collectively, and together with each of their successors, "<u>Chubb</u>") had valid, enforceable, properly perfected, and non-avoidable liens and/or security interests on property (including Cash Collateral) of the Debtors as of the Petition Date, which liens and/or security interests were senior to the liens and/or security interests of each of the Prepetition Secured Parties, such liens and/or security interests shall be senior to any liens and/or security interests granted pursuant to this Order, (ii) the DIP Agents, the DIP Lenders and the Prepetition Secured Parties do not have liens and/or security interests on any letter(s) of credit for which Chubb is the beneficiary or any proceeds thereof, and (iii) this Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements.

56.   <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, the Committee, or any party in interest.

57.   <u>Binding Effect of Final Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, all

other creditors of any of the Debtors, the Committee (or any other court appointed committee appointed in the Cases), and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

58.   <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations and the Prepetition Secured Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash, and all letters of credit under the DIP Facilities shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facilities which survive such discharge by their terms), and all commitments to extend credit under the DIP Facilities have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agents (or the Prepetition Agents), (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or the Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agents (or the Prepetition Agents) for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; *provided*, *however*, that the consent of the DIP ABL Term Agent and the Prepetition ABL Term Agent shall only be required to the extent that such use of Cash Collateral would not result in a "Conforming DIP" as defined

in Section 7.06 of the Prepetition ABL Agreement; (c) without the prior written consent of the

DIP Agents, any lien on any of the DIP Collateral with priority equal or superior to the DIP

Liens, except as specifically provided in the DIP Documents; or (d) without the prior written

consent of the Prepetition Agents, any lien on any of the DIP Collateral with priority equal or

superior to the Prepetition Liens or the Adequate Protection Liens.  The Debtors irrevocably

waive any right to seek any amendment, modification or extension of this Final Order without

the prior written consent, as provided in the foregoing, of the DIP Agents (or the Prepetition

Agents), and no such consent shall be implied by any other action, inaction or acquiescence of

the DIP Agents or the Prepetition Agents.  Notwithstanding anything to the contrary in this Final

Order, the consent of the Prepetition ABL Term Agent and the DIP ABL Term Agent shall not

be required for any amendment or modification to the DIP Documents or this Final Order if such

amendment or modification would result in a "Conforming DIP" under Section 7.06 of the

Prepetition ABL Agreement.

59.    Continuing Effect of Intercreditor Agreement.    The Debtors, the DIP

Agents, the DIP Lenders, and the Prepetition Secured Parties each shall be bound by and their

respective rights shall be governed in all respects by, and be subject to all the terms, provisions

and restrictions of, the Intercreditor Agreement, including with respect to the DIP Facilities.

60.    Final Order Controls.  In the event of any inconsistency between the terms

and conditions of the DIP Documents and of this Final Order, the provisions of this Final Order

shall govern and control.

61.    Discharge.  The DIP ABL Obligations, the DIP Term Loan Obligations,

and the obligations of the Debtors with respect to the adequate protection provided herein shall

not be discharged by the entry of an order confirming any plan of reorganization in any of the

Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such confirmed plan of reorganization, or each of the DIP ABL Administrative Agent, the DIP Term Loan Agent, the DIP Lenders, the Prepetition ABL Administrative Agent and the Prepetition Term Loan Agent, as applicable, has otherwise agreed in writing; *provided* that (a) the DIP Term Roll Up Loans may be converted into Roll-Up Conversion Shares (as defined in the Restructuring Support Agreement) and (b) a portion of the New Money DIP Term Loans may be converted into DIP Surplus Conversion Shares (as defined in the Restructuring Support Agreement), in each case, in accordance with a chapter 11 plan.  None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or an order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment in full in cash of the DIP ABL Obligations (in the case of the sale of DIP ABL Priority Collateral) and the DIP Term Loan Obligations (in the case of the sale of DIP Term Priority Collateral) (other than contingent indemnification obligations for which no claim has been asserted), and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Prohibited Plan or Sale") without the written consent of each of the DIP ABL Administrative Agent, the DIP Term Loan Agent, the DIP Lenders, the Prepetition ABL Administrative Agent and the Prepetition Term Loan Agent, as applicable.  For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP ABL Documents and the DIP Term

Loan Documents.

62.    <u>Survival</u>.    The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.    Unless the respective DIP Agent or Prepetition Agent shall have provided its prior written consent, the terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties granted pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such orders described in (a)-(d), above, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until: (i) in respect of the DIP ABL Credit Facility, all the DIP ABL Obligations, pursuant to the DIP ABL Documents and this Final Order, have been indefeasibly paid in full in cash (other than contingent obligations with respect to then unasserted claims) and all letters of credit under the DIP ABL Credit Facility shall have been cancelled or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP ABL Credit Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP ABL Credit Facility are terminated; (ii) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to the Prepetition ABL Documents and this Final Order, have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted); (iii) in respect of the DIP Term Loan Credit Facility, all the DIP Term Loan Obligations, pursuant to the DIP

Term Loan Documents and this Final Order, have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted); and (iv) in respect of the Prepetition Term Loan Agreement, all of the Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents and this Final Order have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted). The terms and provisions concerning the indemnification of the DIP Agents and the DIP Lenders shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations. In addition, the terms and provisions of this Final Order shall continue in full force and effect for the benefit of the Prepetition Term Loan Parties notwithstanding the repayment in full of or termination of the DIP ABL Obligations or the Prepetition ABL Obligations.

63. _Nunc Pro Tunc_ Effect of Final Order. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable _nunc pro tunc_ to the Petition Date immediately upon execution thereof.

64. Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facilities, and/or this Final Order.

65. DIP Election Procedures. Upon entry of the Interim Order, the DIP Election Procedures were approved and became binding. Upon expiration of the Election Deadline any Prepetition Term Loan Lender (other than the holder of the 2017 Incremental Term Loans) that timely completed its Election Joinder in accordance with the Election Procedures became a DIP Term Loan Lender, and the DIP Term Roll Up Loans were deemed allocated to

account for the addition of such DIP Term Loan Lenders as provided in the DIP Term Loan

Agreement.   Any modifications to the Election Procedures proposed by any Prepetition Term

Loan Lender that were not accepted by the DIP Term Loan Agent in writing is void and without

effect.    The DIP Term Loan Agent may, in connection with allocations of the commitments

under the DIP Term Loan Facility and the DIP Term Roll-Up Loans and any other allocations

contemplated to be made pursuant to the DIP Term Loan Agreement, conclusively rely on, and

shall have no liability whatsoever with respect, to ownership information with respect to

Prepetition Term Loan Obligations as set forth on the Register (as defined in the Prepetition

Term Loan Agreement) as of the Election Deadline.

Jul 11 2017

Dated: _____, 2017                       /s/ Keith L. Phillips
Richmond, Virginia                              UNITED STATES BANKRUPTCY JUDGE


Entered on Docket: Jul 11 2017

WE ASK FOR THIS:

/s/ Jeremy S. Williams
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

- and -

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

SEEN:

/s/ Hugh Bernstein
Hugh Bernstein
Office of the United States Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
Telephone: (410) 962-4300
Facsimile: (410) 962-3537

- and -

Robert B. Van Arsdale, Esq.
Shannon Pecoraro, Esq.
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Telephone: (804) 771-2310
Facsimile: (804) 771-2330

*Office of the United States Trustee*

## <u>CERTIFICATION OF ENDORSEMENT</u>
## <u>UNDER LOCAL BANKRUPTCY RULE 9022-1(C)</u>

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

_____ /s/  *Jeremy S. Williams*_____

## **SCHEDULE 1**

Budget

# Weekly Cash Flow Forecast (1 of 2)

AlixPartners

| (USD '000) | 1 06/17 Fcst | 2 06/24 Fcst | 3 07/01 Fcst | 4 07/08 Fcst | 5 07/15 Fcst | 6 07/22 Fcst | 7 07/29 Fcst | 8 08/05 Fcst | 9 08/12 Fcst | 10 08/19 Fcst | 11 08/26 Fcst | 12 09/02 Fcst | 13 09/09 Fcst | 13 WK Total 06/17 to 09/09 | WK 14-26 09/16 to 12/09 | Grand Total 06/17 to 12/09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **13 Week Cash Flow - Summary** | | | | | | | | | | | | | | | | |
| **Collections & Disbursements:** | | | | | | | | | | | | | | | | |
| **COLLECTIONS:** | | | | | | | | | | | | | | | | |
| Stores and E-Commerce | 15,240 | 15,240 | 16,567 | 19,296 | 16,070 | 16,417 | 19,419 | 22,272 | 24,208 | 25,283 | 23,906 | 21,654 | 24,185 | 259,755 | 263,433 | 523,188 |
| Other | 452 | 2,418 | 2,095 | 441 | 1,569 | 869 | 807 | 329 | 2,880 | 939 | 697 | 579 | 3,591 | 17,665 | 20,154 | 37,819 |
| | 15,691 | 17,657 | 18,663 | 19,736 | 17,640 | 17,285 | 20,226 | 22,600 | 27,088 | 26,221 | 24,603 | 22,232 | 27,776 | 277,420 | 283,587 | 561,007 |
| **OPERATING DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Merchandise | 12,317 | 2,537 | 9,908 | 11,236 | 6,254 | 15,183 | 14,029 | 15,060 | 13,928 | 7,042 | 9,970 | 10,826 | 10,322 | 138,612 | 121,866 | 260,478 |
| Payroll & Related | 8,583 | 762 | 8,583 | 1,248 | 8,956 | 723 | 9,245 | 723 | 9,106 | 723 | 10,006 | 723 | 9,106 | 68,486 | 51,438 | 119,924 |
| Other Accounts Payable | - | 1,699 | 5,579 | 3,821 | 5,482 | 3,330 | 3,245 | 3,754 | 3,753 | 3,722 | 4,920 | 3,461 | 3,234 | 46,000 | 51,565 | 97,565 |
| Rent - inc. Stores, HQ, & DC | - | - | 12,410 | 800 | - | - | 13,114 | 800 | - | - | 11,588 | 800 | - | 39,512 | 29,254 | 68,766 |
| Sales Taxes | - | 3,082 | 7,411 | 558 | - | 2,792 | 372 | 636 | - | - | - | 424 | - | 12,215 | 13,572 | 25,787 |
| Other Taxes | 84 | 252 | - | - | 93 | 279 | - | - | 93 | 279 | - | - | 93 | 1,174 | 1,024 | 2,198 |
| | 20,984 | 8,333 | 36,891 | 17,663 | 20,785 | 22,307 | 40,006 | 20,973 | 26,880 | 11,766 | 39,663 | 16,234 | 23,515 | 305,999 | 268,720 | 574,719 |
| **NON-OPERATING DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Principal, Interest, Bank Fees | 6,200 | 560 | 561 | - | - | - | - | 1,547 | - | - | - | 1,315 | - | 9,623 | 4,679 | 14,302 |
| Restructuring Professional Fees | - | - | - | - | - | 4,577 | - | 320 | - | 4,534 | - | - | - | 9,992 | 17,450 | 27,442 |
| | 6,200 | 560 | 561 | - | - | 4,577 | - | 1,867 | - | 4,534 | - | 1,315 | - | 19,615 | 22,129 | 41,744 |
| **NET CASH FLOW** | (11,493) | 8,765 | (18,790) | 2,073 | (3,146) | (9,599) | (19,780) | (240) | 208 | 9,923 | (15,059) | 4,683 | 4,261 | (48,194) | (7,262) | (55,456) |
| **Ending Cash Balances:** | | | | | | | | | | | | | | | | |
| Unrestricted Book Cash | 17,579 | 10,046 | 6,550 | 8,497 | 11,884 | 11,971 | 12,373 | 13,101 | 13,683 | 14,124 | 15,435 | 15,317 | 15,041 | 15,041 | 15,707 | 15,707 |
| Outstanding Checks | | | | | | | | | | | | | | | | |
| Unrestricted BANK Cash | | | | | | | | | | | | | | | | |
| Restricted Cash & 2nd Lien DIP TL Cash | | | | | | | | | | | | | | | | |
| **Total BANK Cash** | 17,579 | 10,046 | 6,550 | 8,497 | 11,884 | 11,971 | 12,373 | 13,101 | 13,683 | 14,124 | 15,435 | 15,317 | 15,041 | 15,041 | 15,707 | 15,707 |
| **Borrowing Base & Availability:** | | | | | | | | | | | | | | | | |
| Effective BB Cert. | 172,207 | 179,109 | 186,952 | 190,328 | 187,333 | 189,155 | 192,232 | 192,930 | 188,522 | 187,067 | 186,189 | 209,168 | 215,777 | 215,777 | 202,357 | 202,357 |
| Less: Outstanding ABL | (68,534) | (50,876) | (55,263) | (53,190) | (56,336) | (65,935) | (85,715) | (85,954) | (85,746) | (75,825) | (90,884) | (86,201) | (81,940) | (81,940) | (74,201) | (74,201) |
| Less: Letters of Credit | (50,037) | (51,984) | (51,209) | (50,648) | (50,883) | (50,922) | (51,157) | (50,768) | (50,768) | (50,963) | (51,157) | (51,190) | (51,138) | (51,138) | (51,157) | (51,157) |
| Less: Min Avail Cash | (22,066) | (22,756) | (23,540) | (23,878) | (23,578) | (23,761) | (24,068) | (24,138) | (23,697) | (23,552) | (23,464) | (23,683) | (26,423) | (26,423) | (25,081) | (25,081) |
| Less: Prof - Fee Carve-Out | (5,657) | (6,696) | (7,815) | (9,084) | (10,352) | (7,319) | (7,210) | (8,536) | (10,078) | (7,403) | (8,546) | (9,688) | (10,847) | (10,847) | (12,000) | (12,000) |
| ABL Availability - Ending | 25,914 | 46,997 | 49,125 | 53,528 | 46,183 | 41,219 | 22,704 | 22,534 | 17,633 | 29,324 | 12,138 | 36,327 | 45,429 | 45,429 | 39,018 | 39,018 |
| 2nd Lien DIP TL – Ending Availability | 21,716 | 21,716 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| **Ending Post-Petition Availability** | 47,629 | 68,713 | 64,125 | 68,528 | 61,183 | 56,219 | 37,704 | 37,534 | 32,633 | 44,324 | 27,138 | 51,327 | 60,429 | 60,429 | 39,018 | 39,018 |
| Minimum Availability | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 35,000 | 35,000 |
| **Weekly Covenant Tests** | | | | | | | | | | | | | | | | |
| Collections* | 15,691 | 17,657 | 18,663 | 19,736 | 17,640 | 17,285 | 20,226 | 22,600 | 27,088 | 26,221 | 24,603 | 22,232 | 27,776 | 277,420 | 283,587 | 561,007 |
| Operating Disbursements | 20,984 | 8,333 | 36,891 | 17,663 | 20,785 | 22,307 | 40,006 | 20,973 | 26,880 | 11,766 | 39,663 | 16,234 | 23,515 | 305,999 | 268,720 | 574,719 |
| Ending Inventory** | 189,430 | 197,542 | 197,543 | 194,699 | 196,434 | 199,810 | 209,646 | 196,432 | 195,153 | 194,457 | 194,489 | 201,028 | 206,108 | 206,108 | 186,386 | 186,386 |
| Credit Extensions | 167,021 | 151,310 | 154,922 | 152,288 | 155,669 | 165,307 | 185,322 | 185,172 | 184,964 | 175,238 | 190,492 | 185,841 | 181,528 | 181,528 | 173,809 | 173,809 |

*Currently there are no Stores subject to Specified Store Closing Sales.

**Represents Gross On-Hand Inventory per the forecasted Borrowing Base

1

# Weekly Cash Flow Forecast (2 of 2)

| (USD '000) | 14 09/16 Fcst | 15 09/23 Fcst | 16 09/30 Fcst | 17 10/07 Fcst | 18 10/14 Fcst | 19 10/21 Fcst | 20 10/28 Fcst | 21 11/04 Fcst | 22 11/11 Fcst | 23 11/18 Fcst | 24 11/25 Fcst | 25 12/02 Fcst | 26 12/09 Fcst | 13 Wk Total 06/17 to 09/09 | Wk 14 - 26 09/16 to 12/09 | Grand Total 06/17 to 12/09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **13 Week Cash Flow – Summary** | | | | | | | | | | | | | | | | |
| **Collections & Disbursements:** | | | | | | | | | | | | | | | | |
| **COLLECTIONS:** | | | | | | | | | | | | | | | | |
| Stores and E-Commerce | 17,826 | 13,112 | 16,249 | 17,145 | 16,864 | 17,151 | 18,599 | 17,924 | 21,103 | 24,626 | 29,839 | 33,958 | 19,039 | 259,755 | 263,433 | 523,188 |
| Other | 2,231 | 413 | 1,005 | 3,162 | 763 | 790 | 1,280 | 273 | 3,994 | 637 | 647 | 576 | 4,384 | 17,665 | 20,154 | 37,819 |
| Total Collections | 20,057 | 13,525 | 17,255 | 20,306 | 17,626 | 17,941 | 19,878 | 18,197 | 25,097 | 25,263 | 30,486 | 34,534 | 23,423 | 277,420 | 283,587 | 561,007 |
| **OPERATING DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Merchandise | 6,994 | 9,373 | 10,969 | 10,669 | 16,145 | 17,586 | 7,723 | 4,947 | 6,593 | 5,164 | 6,779 | 11,790 | 7,133 | 138,612 | 121,866 | 260,478 |
| Payroll & Related | 723 | 9,106 | 1,560 | 7,480 | 723 | 7,238 | 723 | 7,238 | 723 | 7,238 | 723 | 7,238 | 723 | 68,486 | 51,438 | 119,924 |
| Other Accounts Payable | 3,544 | 3,325 | 3,515 | 3,882 | 3,791 | 4,113 | 4,347 | 5,273 | 3,891 | 4,154 | 4,323 | 3,895 | 3,513 | 46,000 | 51,565 | 97,565 |
| Rent - Inc. Stores, HQ, & DC | | 8,951 | 800 | | 8,951 | 3,085 | 800 | | | | 9,751 | | | 39,512 | 29,254 | 68,766 |
| Sales Taxes | 723 | 3,798 | 506 | 617 | | | 411 | 616 | | | 3,080 | 584 | 876 | 12,215 | 13,572 | 25,787 |
| Other Taxes | 279 | | | | 93 | 279 | | | | 93 | 279 | | | 1,174 | 1,024 | 2,198 |
| Total Operating Disbursements | 11,540 | 34,553 | 17,351 | 22,647 | 20,752 | 41,252 | 14,004 | 18,074 | 11,208 | 16,650 | 24,937 | 23,507 | 12,245 | 305,999 | 268,720 | 574,719 |
| **NON-OPERATING DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Principal, Interest, Bank Fees | | | 1,447 | | | | | 1,694 | | | | 1,537 | | 9,623 | 4,679 | 14,302 |
| Restructuring Professional Fees | 4,032 | | 20 | | 4,120 | | 1,001 | | 4,181 | | | | 4,096 | 9,992 | 17,450 | 27,442 |
| Total Non-Operating Disbursements | 4,032 | | 1,467 | | 4,120 | | 1,001 | 1,694 | 4,181 | | | 1,537 | 4,096 | 19,615 | 22,129 | 41,744 |
| **NET CASH FLOW** | 4,484 | (21,029) | (1,563) | (2,341) | (7,245) | (23,312) | 4,873 | (1,571) | 9,707 | 8,613 | 5,550 | 9,490 | 7,082 | (48,194) | (7,262) | (55,456) |
| **Ending Cash Balances:** | | | | | | | | | | | | | | | | |
| Unrestricted Book Cash | 14,068 | 13,914 | 13,943 | 14,260 | 14,440 | 14,842 | 15,351 | 14,437 | 12,830 | 11,889 | 21,100 | 17,496 | 14,707 | 14,041 | 14,707 | 14,707 |
| Outstanding Checks | | | | | | | | | | | | | | | | |
| Unrestricted BANK Cash | 14,068 | 13,914 | 13,943 | 14,260 | 14,440 | 14,842 | 15,351 | 14,437 | 12,830 | 11,889 | 21,100 | 17,496 | 14,707 | 14,041 | 14,707 | 14,707 |
| Restricted Cash & 2nd Lien DIP TL Cash | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| **Total BANK Cash** | 15,068 | 14,914 | 14,943 | 15,260 | 15,440 | 15,842 | 16,351 | 15,437 | 13,830 | 12,889 | 22,100 | 18,496 | 15,707 | 15,041 | 15,707 | 15,707 |
| **Borrowing Base ABL & Availability:** | | | | | | | | | | | | | | | | |
| Effective BB Cert. | 221,176 | 218,416 | 217,356 | 216,575 | 213,546 | 212,296 | 216,634 | 213,658 | 214,265 | 224,961 | 219,367 | 210,520 | 202,357 | 215,777 | 202,357 | 202,357 |
| Less: Outstanding ABL | (77,455) | (98,484) | (100,047) | (102,389) | (109,634) | (117,946) | (113,072) | (114,644) | (104,936) | (96,323) | (90,774) | (81,283) | (74,201) | (81,940) | (74,201) | (74,201) |
| Less: Letters of Credit | (55,092) | (55,125) | (55,157) | (51,157) | (51,157) | (51,157) | (51,157) | (51,157) | (51,157) | (51,157) | (51,157) | (51,157) | (51,157) | (51,138) | (51,157) | (51,157) |
| Less: Min Avail Cash | (26,363) | (26,687) | (26,581) | (26,502) | (26,200) | (26,075) | (26,508) | (26,211) | (26,272) | (27,341) | (26,782) | (25,897) | (25,081) | (26,423) | (25,081) | (25,081) |
| Less: Prof. Fee Carve Out | (8,090) | (9,249) | (10,407) | (11,566) | (8,745) | (9,904) | (11,662) | (12,221) | (10,279) | (11,438) | (13,558) | (14,756) | (12,900) | (10,847) | (12,900) | (12,900) |
| ABL Availability - Ending | 57,576 | 32,872 | 29,163 | 24,960 | 17,810 | 7,215 | 14,834 | 9,425 | 21,621 | 38,701 | 37,057 | 37,426 | 39,018 | 45,429 | 39,018 | 39,018 |
| 2nd Lien DIP TL – Ending Availability | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| *Memo: Ending DIP TL Balance* | *20,000* | *20,000* | *20,000* | *20,000* | *20,000* | *20,000* | *20,000* | *20,000* | *20,000* | *20,000* | *20,000* | *20,000* | *35,000* | *20,000* | *35,000* | *35,000* |
| **Ending Post-Petition Availability** | 72,576 | 47,872 | 44,163 | 39,960 | 32,810 | 22,215 | 29,834 | 24,425 | 36,621 | 53,701 | 52,057 | 52,426 | 54,018 | 60,429 | 54,018 | 54,018 |
| **Weekly Covenant Tests** | | | | | | | | | | | | | | | | |
| *Collections** | *20,057* | *13,525* | *17,255* | *20,306* | *17,626* | *17,941* | *19,878* | *18,197* | *25,097* | *25,263* | *30,486* | *34,534* | *23,423* | *277,420* | *283,587* | *561,007* |
| *Operating Disbursements* | *11,351* | *34,534* | *17,351* | *22,647* | *20,752* | *41,252* | *14,014* | *18,074* | *11,208* | *16,650* | *24,937* | *23,507* | *12,245* | *305,998* | *268,710* | *574,707* |
| *Ending Inventory*** | *203,758* | *202,885* | *199,658* | *201,996* | *198,642* | *202,690* | *200,138* | *200,821* | *210,665* | *205,775* | *197,568* | *190,830* | *186,386* | *206,108* | *186,386* | *186,386* |
| *Credit Extensions* | *176,598* | *198,059* | *199,655* | *201,596* | *209,241* | *217,553* | *212,680* | *214,251* | *204,544* | *195,591* | *190,381* | *180,891* | *173,809* | *181,528* | *173,809* | *173,809* |

* Currently there are no Stores subject to Specified Store Closing Sales.

** Represents Gross On-Hand Inventory per the forecasted Borrowing Base

# Summary of Covenant Compliance for Cash Flow Related Items

**The Gymboree Corporation**
**Covenant Testing**
**Week Ending xx/xx/xxxx**
*($'s in Millions)*

| # | Title | Test Details — Period Tested | % | Variance Actuals vs. Test Thresholds — Budget | Test Level | Actual | Cushion vs. Test — Better/(Worse) $ | % | Pass/Fail |
|---|---|---|---|---|---|---|---|---|---|
| | **Cash Flow Tests** | | | | | | | | |
| 1) | Collections | Cumulative 4-week | -10% | | | | | | |
| 2) | Operating Disbursements | Cumulative 4-week | +10% | | | | | | |
| 3) | Ending Inventory | Balance | -15% | | | | | | |
| 4) | Credit Extensions (i) ABL RC drawn (ii) LC outstandings (iii) ABL TL drawn | Balance | +10% | | | | | | |
| 5) | Capital Expenditures* | Cumulative Fiscal Month | 0% | | | | | | |

**Budget w/Version** 06/17 06/24 07/01 07/08 — **Total/Test**

**Actuals** 06/17 06/24 07/01 07/08 — **Total/Test**

**Supporting Details**

**Budget Definitions**
I — Initial Approved Budget Delivered on 06/09/17
II — [Future Budget]
III — [Future Budget]
IV — [Future Budget]
V — [Future Budget]

**Page & Section References of Tests in Credit Agreements**

| | ABL Term Loan | Test |
|---|---|---|
| 1) | 5.18b(ii) - Pg 116 Budget Event def. - Pg 4 | Collections |
| 2) | 5.18b(ii) - Pg 116 Budget Event def. - Pg 4 | Operating Disbursements |
| 3) | 5.18b(ii) - Pg 116 N/A | Ending Inventory |
| 4) | 4.02b - Pg 103 4.02h - Pg 43 | Credit Extensions |
| 5) | N/A 7.15 - Pg 67 | Capital Expenditures* |

*Tested on an accounting basis following monthly accounting close

AlixPartners

3

# Capital Expenditure Budget

**The Gymboree Corporation**
**Monthly Capital Expenditure Budget**

| US$000's | P5-17 Jun 07/01 | P6-17 Jul 07/29 | P7-17 Aug 08/26 | P8-17 Sep 09/30 | P9-17 Oct 10/28 | P10-17 Nov 11/25 | P11-17 Dec 12/30 | Total 7 months |
|---|---|---|---|---|---|---|---|---|
| **Total Capital Expenditures** | $ 3,214 | $ 1,245 | $ 2,143 | $ 1,160 | $ 1,383 | $ 2,129 | $ 1,735 | $13,008 |
| **Cumulative Test Threshold** | $ 3,214 | $ 4,458 | $ 6,602 | $ 7,762 | $ 9,144 | $11,273 | $13,008 | |

Term Loan Credit Agreement Reference:  7.15 - Pg 67

**Alix**Partners

4

## SCHEDULE 2

Case Milestones

## SCHEDULE 5.19

### Required Milestones

Each of the following DIP Milestones, Plan Milestones and Sale Milestones, a "<u>Required Milestone</u>" and collectively, the "<u>Required Milestones</u>":

(a)     Achieve each of the following milestones (as any such milestone may be extended with the consent of the Administrative Agent and the ABL Term Loan Agent (in their sole and absolute discretion) for a period of not more than 10 days or for such longer period with the consent of the Administrative Agent, the ABL Term Loan Agent and the Required Lenders (in their sole and absolute discretion), collectively, the "<u>DIP Milestones</u>"), in each case on terms and conditions, and subject to documentation (including, in all cases, forms of all applicable orders) in form and substance, reasonably acceptable to the Administrative Agent and the ABL Term Loan Agent in all respects.

(i)     On the Petition Date, the Debtors shall file a motion seeking approval of the credit facilities evidenced by the Agreement and the DIP Term Loan Agreement.

(ii)     On or before 3 Business Days after the Petition Date, the Interim Order shall have been entered by the Bankruptcy Court.

(iii)     On or before 10 days after the Petition Date, the Debtors shall have filed a motion requesting, and within 35 days after the Petition Date shall have obtained, an order of the Bankruptcy Court extending the lease assumption/rejection period such that the lease assumption/rejection period shall be 210 days.

(iv)     On or before 35 days after the Petition Date, the Final Order authorizing and approving the facilities evidenced by the Agreement and the DIP Term Loan Agreement on a final basis shall have been entered by the Bankruptcy Court.

(b)     Achieve each of the following milestones (as any such milestone may be extended with the consent of the Administrative Agent and the ABL Term Loan Agent (in their sole and absolute discretion) for a period of not more than 10 days or for such longer period with the consent of the Administrative Agent, the ABL Term Loan Agent and the Required Lenders (in their sole and absolute discretion), collectively, the "<u>Plan Milestones</u>"), in each case on terms and conditions, and subject to documentation (including, in all cases, forms of all applicable orders) in form and substance, reasonably acceptable to the Administrative Agent and the ABL Term Loan Agent in all respects.

(i)     On or before 5 days after the Petition Date, the Debtors shall have filed a Chapter 11 plan of reorganization and a disclosure statement relating to such plan of reorganization, which plan of reorganization shall be supported by committed financing and the Restructuring Support Agreement and shall provide, among other things, for payment in full in cash of the Obligations and the Pre-Petition Obligations on the effective date, and the Administrative Agent and the ABL Term Loan Agent shall be reasonably satisfied that such plan of reorganization is reasonably anticipated to become effective on or prior to the 110th day after the Petition Date (any such Chapter 11 plan of reorganization, an "<u>Acceptable Plan</u>").

(ii)     On or before 55 days after the Petition Date, the Debtors shall have obtained an order from the Bankruptcy Court approving the disclosure statement and voting and solicitation procedures for an Acceptable Plan, or if such disclosure statement and voting and solicitation procedures are not approved by such date, the Debtors shall file on or before 60 days after the

Petition Date, a motion to approve a sale of substantially all of the Debtors' assets (the "Sale") pursuant to Section 363 of the Bankruptcy Code (the "Sale Motion"), and the terms of such Sale Motion and related bidding procedures shall be in form and substance reasonably acceptable to the Administrative Agent and the ABL Term Loan Agent.

(iii)    On or before 95 days after the Petition Date, either (A) the Debtors shall have obtained an order from the Bankruptcy Court confirming an Acceptable Plan or (B) the Debtors shall have obtained a stalking horse bid approved by the Administrative Agent and the ABL Term Loan Agent for a liquidation on an equity basis of the entire chain of Stores of the Debtors and all of the assets relating thereto under Section 363 of the Bankruptcy Code (the "Full Chain Liquidation"), which Full Chain Liquidation shall generate sufficient proceeds to repay in full in cash all of the Obligations and Pre-Petition Obligations.

(iv)    In the event that the Debtors have met Milestone (b)(iii)(B) above, on or before 100 days after the Petition Date, the Debtors shall have obtained an order from the Bankruptcy Court approving bidding procedures for the Full Chain Liquidation, which bidding procedures shall be in form and substance reasonably acceptable to the Administrative Agent and the ABL Term Loan Agent.

(v)    In the event that the Debtors have met Milestone (b)(iii)(B), on or before 105 days after the Petition Date, either (A) the Debtors shall have obtained an order from the Bankruptcy Court confirming an Acceptable Plan, which order shall be of immediate effect and include a waiver of the 14-day stay provision or (B) the Debtors shall have conducted an auction for the Full Chain Liquidation.

(vi)    On or before 110 days after the Petition Date, either (A) the Debtors shall have obtained an order of the Bankruptcy Court approving the Full Chain Liquidation or (B) the effective date of the Acceptable Plan shall have occurred in accordance with its terms, and the Debtors shall have emerged from the Chapter 11 Cases.

(vii)    In the event that the Debtors have met Milestone (b)(vi)(A), on or before 111 days after the Petition Date, the Debtors shall have commenced the Full Chain Liquidation.

(c)    Achieve each of the following milestones (as any such milestone may be extended with the consent of the Administrative Agent and the ABL Term Loan Agent (in their sole and absolute discretion) for a period of not more than 10 days or for such longer period with the consent of the Administrative Agent, the ABL Term Loan Agent and the Required Lenders (in their sole and absolute discretion), collectively, the "Sale Milestones"), in each case on terms and conditions, and subject to documentation (including, in all cases, forms of all applicable orders) in form and substance, reasonably acceptable to the Administrative Agent and the ABL Term Loan Agent in all respects.

(i)    If the disclosure statement and voting and solicitation procedures for an Acceptable Plan are not approved by the date specified in paragraph (b)(ii) above, on or before 60 days after the Petition Date, the Debtors shall have filed the Sale Motion.

(ii)    If the disclosure statement and voting and solicitation procedures for an Acceptable Plan are not approved by the date specified in paragraph (b)(ii) above, on or before 75 days after the Petition Date, the Bankruptcy Court shall have entered an order approving the bidding procedures.

(iii)    If the disclosure statement and voting and solicitation procedures for an Acceptable Plan are not approved by the date specified in paragraph (b)(ii) above, on or before 95 days after the Petition Date, the Bankruptcy Court shall have entered an order approving the Sale.

(iv)    If the disclosure statement and voting and solicitation procedures for an Acceptable Plan are not approved by the date specified in paragraph (b)(ii) above, on or before 110 days after the Petition Date, the Debtors shall have consummated the Sale.

(v)    On or before July 17, 2017, the Debtors shall have obtained approval from the Bankruptcy Court to retain the Specified Liquidation Agent to assist the Debtors in conducting the Specified Store Closing Sales.

(vi)    On or before July 18, 2017, the Debtors shall have commenced, and shall thereafter continue, the Permitted Store Closing Sales, pursuant to the terms of the Specified Liquidation Agreement and any other relevant documentation referred to in the definition of Specified Store Closing Sales.

(vii)    On or before September 30, 2017, the Debtors shall have completed the Permitted Store Closing Sales, pursuant to the terms of the Specified Liquidation Agreement and any other relevant documentation referred to in the definition of Specified Store Closing Sales.

The Loan Parties shall provide the Administrative Agent and the ABL Term Loan Agent with any information or materials reasonably requested by the Administrative Agent and the ABL Term Loan Agent in connection with the Loan Parties' progress on achieving any Required Milestone.